[No. B198408. Second Dist., Div. Seven. Mar. 28, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BRANDON LAMAR PRUITT, Defendant and Appellant.

638

### COUNSEL

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Theresa A. Patterson, Lawrence M. Daniels and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**PERLUSS, P. J.**—A probationer is arrested and jailed on new criminal charges. Sometime thereafter the same conduct that led to the probationer's arrest is alleged as a probation violation, and probation is summarily revoked. Following a probation violation hearing, probation remains revoked; a previously stayed state prison sentence is imposed; and the prosecutor asks the court to dismiss the new criminal charges in furtherance of justice. Is the probationer in this situation entitled to presentence custody credit pursuant to Penal Code section 2900.5, subdivision (b),[1] for the time spent in jail on the new criminal charges following his or her arrest but prior to the summary revocation of his or her probation?

In an opinion written by Justice Epstein nearly 18 years ago, Division Four of this court answered no to a virtually identical question. (*People v. Huff* (1990) 223 Cal.App.3d 1100 [273 Cal.Rptr. 44] (*Huff*).) However, in *In re Marquez* (2003) 30 Cal.4th 14, 26–28 [131 Cal.Rptr.2d 911, 65 P.3d 403] (conc. opn. of Moreno, J.) (*Marquez*) Justice Moreno, in a concurring opinion joined by Justice Brown, suggested the manner of computing presentence custody credits utilized in *Huff* conflicts with the method employed by the Court of Appeal in *People v. Williams* (1992) 10 Cal.App.4th 827 [13 Cal.Rptr.2d 107] (*Williams*), which had been subsequently endorsed by the Supreme Court in *People v. Bruner* (1995) 9 Cal.4th 1178 [40 Cal.Rptr.2d 534, 892 P.2d 1277] (*Bruner*). Based on our own review of *Bruner* and the majority and concurring opinions in *Marquez*, we conclude *Huff* resolved the issue properly and continues to be good law. Accordingly, we affirm the trial court's computation of Brandon Lamar Pruitt's presentence custody credits following revocation of Pruitt's probation.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2006, pursuant to a negotiated agreement, Pruitt pleaded no contest to one count of first degree burglary (§ 459) and was sentenced to

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

the middle term of four years in state prison. In accordance with the terms of the agreement, sentence was suspended, and Pruitt was placed on formal probation for three years (Super. Ct. L.A. County case No. SA058258). One of the conditions of probation was that Pruitt obey all laws.

On June 10, 2006 Pruitt was arrested for possession of burglary tools (§ 466) and suspicion of automobile burglary (§ 459). Subsequent investigation led to the discovery of a recently stolen car stereo (found in the trunk of the car Pruitt was driving at the time of his arrest) and a recently stolen laptop computer (found at Pruitt's residence). Pruitt was charged by criminal complaint filed on July 11, 2006 with two counts of receiving or concealing stolen property (§ 496, subd. (a)) (Super. Ct. L.A. County case No. YA065441). Although bail was set, Pruitt remained in custody. After several pretrial motions and a number of continuances, on December 14, 2006, the day trial was scheduled to begin, the case was dismissed pursuant to section 1382 when the People announced they were not able to proceed and Pruitt refused any further time waivers. Pruitt was ordered released from custody.[2]

A new criminal complaint, again charging two counts of receiving or concealing stolen property, was filed on December 15, 2005 (Super. Ct. L.A. County case No. YA066890). Pruitt was arraigned the same day, and his request for release on his own recognizance was denied. Bail was set at $25,000. Pruitt remained in custody.

A preliminary hearing was held on January 2, 2007, at which time Pruitt was held to answer. Pruitt was thereafter charged by information with two counts of receiving or concealing stolen property; the information also alleged Pruitt's prior burglary conviction was a serious or violent felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

Also on January 2, 2007, in case No. SA058258, Pruitt's probation was summarily revoked and he was remanded to custody without bail. A contested probation revocation hearing was held on March 14 and 15, 2007. At the conclusion of the hearing, the court found Pruitt had violated the conditions of his probation by possessing burglary tools and by receiving stolen property. The court revoked probation and imposed the previously suspended sentence of four years in state prison. At the request of the People, the charges in case No. YA066890 were dismissed in furtherance of justice

---

[2] Neither counsel for Pruitt nor the Attorney General has been able to locate the court file for case No. YA065441. We have reconstructed the procedural history of the case from the superior court's computerized case records, which we provided to counsel. We take judicial notice of those records. (Evid. Code, §§ 452, 459.)

(§ 1385). Pruitt was awarded 114 days of presentence credit, which included three days in actual custody prior to his plea agreement in February 2006, 73 days in actual custody from January 2, 2007 through March 15, 2007 and 38 days of conduct credit. The court denied Pruitt's request for additional presentence custody credit for the period from his initial arrest on June 10, 2006 through summary revocation of probation on January 2, 2007 (an additional 206 days of actual custody and 102 days of conduct credit).

## CONTENTION

On appeal Pruitt challenges only the trial court's refusal to award presentence custody credit for the period June 10, 2006 to January 1, 2007.

## DISCUSSION

### 1. *Section 2900.5*

Presentence custody credit is generally authorized by section 2900.5, subdivision (a), which provides, "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail . . . , all days of custody of the defendant . . . , and including days credited to the period of confinement pursuant to Section 4019,[3] shall be credited upon his or her term of imprisonment . . . ." Section 2900.5, subdivision (b), however, limits the circumstances in which presentence custody credit may be awarded: "For purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." The issue in this case, therefore, is whether the custody Pruitt asserts should be credited—the period between his arrest and the summary revocation of his probation—can be deemed "attributable to proceedings related to the same conduct for which [Pruitt] has been convicted." (*Ibid.*)

Proper construction of the limiting language in section 2900.5, subdivision (b), has engendered considerable difficulty: " 'Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is "difficult to interpret and apply." [Citation.] As we have noted, in what is surely an understatement, "[c]redit determination is not a simple matter." ' " (*Marquez, supra,* 30 Cal.4th at p. 19; see *In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967] ["there is no

---

[3] Section 4019 authorizes two days of good time/work time credit for each completed four-day block of actual custody time. (§ 4019, subds. (b), (c), (f); see *People v. Thomas* (1999) 21 Cal.4th 1122, 1127 [90 Cal.Rptr.2d 642, 988 P.2d 563].)

simple or universal formula to solve all presentence credit issues"].) Four cases guide our application of section 2900.5, subdivision (b), to the case at bar: *Huff, supra,* 223 Cal.App.3d 1100; *Williams, supra,* 10 Cal.App.4th 827; *Bruner, supra,* 9 Cal.4th 1178; and *Marquez, supra,* 30 Cal.4th 14.

### 2. The Relevant Case Law

#### a. People v. Huff

In *Huff, supra,* 223 Cal.App.3d 1100, Huff was on probation following his guilty plea in a drug possession case when he was detained for speeding. The officers involved suspected the car Huff was driving was stolen, but he was not arrested at that time. Several weeks later Huff was arrested for grand theft automobile. He was arraigned on that charge; bail was set; and the case scheduled for further proceedings. The matter was then repeatedly continued and finally dismissed because the People were unable to proceed within the time required by section 1382. (*Huff,* at pp. 1102–1103.) In the meantime, more than two months after his arrest, Huff's probation was summarily revoked based on the pending theft charge. Although Huff had remained in pretrial custody following his arrest, he was remanded without bail in the original drug case upon revocation of probation. (*Id.* at p. 1103.)

Following a hearing, Huff was found in violation of the conditions of his probation based on evidence he had stolen the automobile he had been driving at the time of the traffic stop. (*Huff, supra,* 223 Cal.App.3d at p. 1103.) Huff's probation remained revoked, and he was sentenced to the middle term of two years in state prison in the original drug possession case. In sentencing Huff, the trial court granted presentence custody credit from the date of his arraignment on the grand theft automobile charge through the date of sentencing. (*Id.* at p. 1104.) Huff argued he was entitled to additional presentence custody credit for the time between the date of his arrest on the theft charge and the date of his arraignment on that charge.[4] The Court of Appeal not only rejected Huff's claim but also reduced his presentence credit to the period from the date his probation had been summarily revoked until sentencing. (*Huff,* at p. 1104.)

In explaining their decision, our colleagues in Division Four reviewed several Supreme Court decisions involving the issue of presentence custody (*In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789]; *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910]; and the then recent decision in *In re Joyner, supra,* 48 Cal.3d 487) and summarized the

---

[4] The People argued Huff was not entitled to any credit from the date of his arrest through sentencing, a position rejected by the Court of Appeal. (*Huff, supra,* 223 Cal.App.3d at pp. 1104, 1106.)

governing policy as precluding credit for the sentence in one offense when custody is solely attributable to another offense. (*Huff, supra*, 223 Cal.App.3d at p. 1104.) Applying that principle to Huff's case, the court concluded "it is clear that appellant is entitled to no presentence credit against his sentence in this case [the drug possession conviction] for his time in custody on the new charges [grand theft automobile]. . . . That crime formed the basis of the eventual revocation of probation in this case, but appellant's custody was attributable to the new charge, not to the narcotics conviction that had led to grant of probation more than a year before. [¶] While it is true that the new charges were eventually dismissed due to a failure to prosecute, so that there was no resulting sentence against which to credit appellant's time in custody on those charges, that fact does not transmute the custody to time attributable to the old charges." (*Id.* at p. 1105.)

Pruitt concedes his situation is factually indistinguishable from Huff's. Although the new charges in Huff's case (grand theft automobile) were dismissed for failure to prosecute prior to the probation violation hearing relating to the original conviction, while the new charges against Pruitt (receiving stolen property) were not dismissed until the conclusion of the probation violation hearing,[5] in both cases the probationers were arrested on new charges, held in custody solely on those charges for a period prior to summary revocation of their probation and ultimately sentenced on the underlying convictions not the new charges, albeit for engaging in the conduct that led to the filing of the new charges. Under the holding in *Huff, supra*, 223 Cal.App.3d at page 1105, the trial court properly denied Pruitt's request for additional custody credit. The question remains whether *Huff* is still good law.

b. *People v. Williams*

Two years after *Huff, supra*, 223 Cal.App.3d 1100 the court in *Williams, supra*, 10 Cal.App.4th 827 considered a defendant's entitlement to presentence credits in another case involving a probationer whose custody related to both new criminal charges and his violation of the conditions of probation. Williams, on probation for misdemeanor petty theft, was arrested for sexually assaulting a child under the age of 14 years and was charged with multiple felonies, all relating to the same victim. Immediately after his arrest, his probation was summarily revoked. Thereafter, Williams was found in violation of probation for failing to obey all laws, based on the evidence relating

---

[5] As discussed, the original charges of receiving stolen property pending against Pruitt (case No. YA065441) were in fact dismissed, and Pruitt ordered released, before summary revocation of his probation. The People do not argue this initial period of custody—from June 10, 2006 through December 14, 2006—should be treated differently from Pruitt's subsequent, prerevocation custody time following the renewed criminal filing in case No. YA066890—from December 15, 2006 through January 1, 2007.

to the sexual assault case. He was sentenced to serve 177 days in jail on the misdemeanor conviction, with presentence credit for the time he had been in jail. Two months later, while serving the misdemeanor sentence, Williams pleaded no contest to one count of rape in concert (§ 264.1) pursuant to a negotiated agreement and was sentenced to the upper term of nine years in state prison; all other pending charges were dismissed. The trial court denied Williams any presentence credits, reasoning his probation had been revoked not only because of the rape in concert but also because of the other dismissed charges as well. Therefore, Williams could not meet his burden of showing the conduct that was the violation of probation was the same conduct for which he was convicted and sentenced. (*Williams*, at pp. 828–832.)

The Court of Appeal accepted the Attorney General's concession and reversed the denial of presentence custody credit, holding Williams's presentence custody following revocation of his probation was attributable to proceedings relating to the same conduct for which he was convicted, as required by section 2900.5, subdivision (b): "[H]e would have been free of incarceration for probation violation but for such proceedings relating to his conduct with the victim, Amy, for which he was convicted and sentenced; . . . some portion of appellant's presentence custody did not, because of [the prosecution's] dismissal [of 12 counts of the information], become *non*attributable to the proceedings related to the same conduct charged in the count on which he was convicted." (*Williams, supra*, 10 Cal.App.4th at p. 834.)

On its face, nothing in the holding or reasoning of *Williams, supra*, 10 Cal.App.4th 827 appears inconsistent with *Huff, supra*, 223 Cal.App.3d 1100, which is not discussed or even cited in the *Williams* opinion. In *Williams* the defendant was in local jail custody both for violating probation in his original petty theft case and while awaiting trial and sentencing on new charges; these two facets of Williams's custody were predicated on the same conduct, his sexual assault of a child. His custody, therefore, was plainly attributable to the same conduct as involved in the felony proceedings leading to his conviction. In contrast, in *Huff*—as in the case at bar—the initial period of local jail custody was attributable solely to the new charges (grand theft automobile); no proceedings ever resulted in Huff's conviction on those charges; and Huff's involvement in stealing an automobile was simply not the same conduct for which he was convicted and thereafter sentenced.

c. People v. Bruner *and* Bruner'*s footnote 10*

Most of the appellate cases dealing with the proper interpretation and application of section 2900.5, subdivision (b), have involved the determination of credit for an individual in local custody based on more than one

pending matter, commonly referred to as a "multiple restraint" question. As discussed, *Williams, supra,* 10 Cal.App.4th 827, but not *Huff, supra,* 223 Cal.App.3d 1100, falls into this category. The Supreme Court's decision in *Bruner, supra,* 9 Cal.4th 1178, upon which Pruitt places heavy reliance, is also a multiple restraint case.

Rejecting a more relaxed causation standard articulated by the majority in *In re Atiles, supra,* 33 Cal.3d 805, the Supreme Court in *Bruner* held a defendant in a multiple restraint situation cannot obtain credit for confinement prior to sentence "if he cannot prove the conduct which led to the sentence was a dispositive, or 'but for,' cause of the presentence custody." (*Bruner, supra,* 9 Cal.4th at p. 1180; see also *id.* at pp. 1193–1194 ["where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint"].)

The defendant in *Bruner* had been on parole following his release from prison after an armed robbery conviction. A warrant for his arrest was issued based on three alleged parole violations: absconding from parole supervision, theft of a credit card, and cocaine use. The defendant was arrested, and a search incident to that arrest uncovered a substantial quantity of rock cocaine. The defendant was cited for cocaine possession but released on his own recognizance on that charge. However, he remained in custody under a parole hold pending disposition of his parole status. (*Bruner, supra,* 9 Cal.4th at p. 1181.) Parole was thereafter revoked based on the three earlier violations plus his possession of cocaine at the time of his arrest. (*Ibid.*) A 12-month prison term was imposed; the defendant received full credit against that term for the time he had spent in local custody. While serving the new 12-month term, a criminal information was filed charging the defendant with possession of cocaine. He ultimately pleaded guilty to that charge and received a 16-month prison sentence (the lower term) for the drug offense, to be served concurrently with the revocation term. The Supreme Court affirmed the trial court's order denying presentence custody credit for the period between the defendant's initial arrest and his sentence on the drug offense, concluding credit should be denied when a defendant sentenced to a new criminal term seeks credit for presentence custody attributable to a parole revocation caused in part, but not exclusively, by the conduct that led to the new sentence. (*Id.* at pp. 1182–1183.) "[N]either the words nor the history of section 2900.5 implies that separately imposed criminal and revocation terms based on unrelated conduct should collapse into one simultaneous term whenever it happens that there was some common factual basis for both proceedings." (*Id.* at p. 1193.)

The *Bruner* court acknowledged the potential unfairness of the strict causation rule it applied, but explained "it arises from the limited purposes of the credit statute itself. The alternative is to allow endless duplicative credit against separately imposed terms of incarceration when it is not at all clear that the misconduct underlying these terms was related. . . . [S]uch credit windfalls are not within the contemplation of section 2900.5." (*Bruner, supra,* 9 Cal.4th at p. 1193.) Further responding to the suggestion a rule of strict causation in these circumstances worked an undue hardship on defendants, the court noted a "defendant's burden, while onerous, is not necessarily impossible" (*id.* at p. 1193, fn. 10), giving as an example *Williams, supra,* 10 Cal.App.4th 827, a multiple restraint case in which the Court of Appeal, as discussed above, had concluded the defendant was entitled to credit against his sentence for time spent in custody on the probation revocation because this custody arose from the identical conduct that led to the criminal sentence on the new offense. (*Bruner,* at p. 1193, fn. 10.)

### d. *People v. Marquez*

*Marquez, supra,* 30 Cal.4th 14, the Supreme Court's most recent discussion of the meaning of section 2900.5, subdivision (b), considered a variation of the multiple restraint question. Marquez was arrested on July 8, 1991, in Monterey County and charged with first degree burglary. He posted bail and was released from custody. Two weeks later, on July 23, 1991, Marquez was arrested in Santa Cruz County for committing a different burglary. He was remanded to custody, where he remained for the balance of the judicial proceedings. Monterey County placed a hold on Marquez on August 21, 1991. (*Marquez,* at p. 17.)

Marquez was convicted of burglary and related enhancements in Santa Cruz County and sentenced to an aggregate state prison term of 10 years. He received 142 days of presentence custody credit for the time he had spent in Santa Cruz County Jail from his arrest through his December 11, 1991 sentencing. Marquez was then rebooked into the Monterey County jail. (*Marquez, supra,* 30 Cal.4th at p. 18.) After being convicted of first degree burglary in Monterey County Superior Court, Marquez was sentenced to 30 years in prison on that charge (because of his prior serious felony convictions). Thereafter, the Monterey County conviction was affirmed (although the sentence was reduced from 30 years to 25 years); but the Santa Cruz County conviction was reversed; the sentence vacated; and those charges dismissed in the interests of justice. In a petition for writ of habeas corpus, Marquez sought credit against his Monterey County sentence for time he

spent in custody between the day he was sentenced in the Santa Cruz County case and the day he was sentenced in the Monterey County case. (*Ibid.*)[6]

The Supreme Court held Marquez was entitled to credit. Noting that Marquez had been in custody since his arrest for his Santa Cruz County crimes, once Monterey County placed a hold on him, his custody was attributable to the pending criminal charges in both counties. "Had Santa Cruz County dropped its charges at that time, [Marquez's] subsequent custody would have been attributable solely to the Monterey County hold . . . . [O]nce Santa Cruz County dismissed its charges, all custody following Monterey County's hold, including the period between petitioner's sentencing in Santa Cruz County and his Monterey County sentencing, is properly characterized as 'attributable to [the Monterey County] proceedings related to the same conduct for which the defendant has been convicted.' [Citation.] The plain meaning of section 2900.5[, subdivision ](b) thus supports [Marquez's] claim." (*Marquez, supra*, 30 Cal.4th at p. 20.) Rejecting the argument that giving Marquez credit would "transmute" his Santa Cruz County postsentence custody time into presentence custody time attributed to his Monterey County charges, the court reiterated, "[P]etitioner's custody after Monterey County's August 21st hold originally was attributable to charges in both counties. Once the Santa Cruz County conviction was reversed and the charges dismissed, petitioner's situation was no different than if the Santa Cruz County charges had been dismissed before trial. His custody—attributable originally to both sets of charges—would still be attributable to the remaining charges in Monterey County." (*Id.* at p. 23.)

Finally, responding to the suggestion by the Attorney General that Marquez's situation was similar to that of the defendant in *Huff, supra*, 223 Cal.App.3d 1100, where presentence credit had been denied for time in local custody relating to criminal charges that had been dismissed by the court, the Supreme Court stated, "Because *Huff* is distinguishable on its facts, it is unhelpful here." (*Marquez, supra*, 30 Cal.4th at p. 24.) The court further explained, "*Huff* would be relevant only if petitioner had sought credit for the time spent in custody from the time he was *arrested* in Santa Cruz County, before Monterey County placed a hold on him, because that period would be analogous to the period in *Huff* commencing with that defendant's arrest for auto theft." (*Ibid.*)

In a concurring opinion in *Marquez* Justice Moreno, joined by Justice Brown, wrote separately to suggest not only was *Huff* factually distinguishable, for the reasons the court had explained, but also, in his view, contrary to

---

[6] The Monterey County Superior Court had awarded Marquez credit for his custody from the time of the Monterey County hold until the date of his sentencing in Santa Cruz County, but denied credit for his custody following his sentencing in Santa Cruz County through the date of his sentencing in Monterey County. (*Marquez, supra*, 30 Cal.4th at pp. 22–23.)

the method of computing presentence custody credits that had been endorsed in *Bruner, supra*, 9 Cal.4th 1178, and in particular in *Bruner*'s footnote citation and discussion of *Williams, supra*, 10 Cal.App.4th 827. (*Marquez, supra*, 30 Cal.4th at pp. 26–28 (conc. opn. of Moreno, J.).) Justice Moreno observed that in *Williams* the Court of Appeal had held the defendant was entitled to credit against his sentence for time spent in custody on the probation revocation because this custody arose from the identical conduct that led to the criminal sentence, while in *Huff* the Court of Appeal had failed to award presentence custody credit even though the probation revocation was once again based on the identical conduct that led to the criminal offense. Therefore, Justice Moreno reasoned, "the method used to calculate presentence custody credits in *Huff* is contrary to the method we endorsed in *Bruner*." (*Marquez*, at p. 27 (conc. opn. of Moreno, J.).) Justice Moreno also suggested "whether the probation hold precedes or is subsequent to the filing of criminal charges is of no moment because custody credit accrues from the date of arrest." (*Id.* at p. 27, fn. 1.)

### 3. *Pruitt Is Not Entitled to Additional Presentence Custody Credit*

Relying on the analysis in Justice Moreno's *Marquez* concurrence, Pruitt asserts *Huff* is inconsistent with *Bruner* and *Williams* and he is entitled to presentence custody credit for the time between his arrest and the summary revocation of his probation because his local jail custody throughout the entire period prior to imposition of the stayed sentence on his original burglary charge was based on the same conduct—his possession of burglary tools and receipt of stolen property. Moreover, because the criminal charges relating to receipt of stolen property were dismissed, there is no issue of duplicate credit that might create a windfall for him, the principal target of the Supreme Court's rule of strict causation in multiple restraint cases. (See *Marquez, supra*, 30 Cal.4th at p. 23.)

Pruitt's argument is founded on a misinterpretation of *Williams, supra*, 10 Cal.App.4th 827, and a fundamental misconception of the nature of the Supreme Court's approval of that decision in *Bruner, supra*, 9 Cal.4th at page 1193, footnote 10. As discussed, *Williams* was a variation of the multiple restraint cases. However, because Williams's confinement in local custody on both new charges and an alleged probation violation was based on the same underlying conduct, the Court of Appeal held he was entitled to presentence custody credit on the sentence for the new offense for time following revocation of probation—in effect, duplicate credit. In *Bruner*, on the other hand, although the defendant was also in custody on new charges and for violating the conditions of his parole, because his parole revocation was predicated only in part on the same conduct as the new charges, the defendant was not entitled to duplicative custody credit for the criminal and revocation

terms. That is, unlike the situation in *Williams*, the defendant in *Bruner* would have been in custody on the parole violation even without the new charges having been filed.

*Huff* and the case at bar are, to a limited extent, same conduct/multiple restraint cases like *Williams*. That is, for a period Huff and Pruitt were in local custody on both new charges and an alleged probation violation based on the same conduct. Even though the new charges relating to that conduct were eventually dismissed, Huff received presentence custody credit for the four weeks his detention was attributable to both proceedings. (*Huff, supra,* 223 Cal.App.3d at p. 1106.) Similarly, Pruitt received presentence credit for the period between January 2, 2007 and March 15, 2007 when he was in custody for both the pending new charges and the alleged probation violation based on the receipt of stolen property. That is all *Bruner* and *Williams* require.

Pruitt, like Huff, however, was also in custody for an initial period solely attributable to the new charges. That custody, even though based on the conduct that ultimately led to revocation of his probation, was clearly and simply not for the same conduct for which he had been convicted and sentenced. In the words of section 2900.5, subdivision (b), that initial custody was not "attributable to proceedings related to the same conduct for which the defendant has been convicted." It is for that reason, we believe, that Justice Werdegar, writing for the court in *Marquez*, concluded *Huff* would be relevant to their case only if Marquez had sought credit for the time he spent in custody in Santa Cruz County before the Monterey County hold was imposed—that is, for a period when his custody was based solely on charges that were ultimately dismissed. (See *Marquez, supra,* 30 Cal.4th at p. 27 (conc. opn. of Moreno, J.) [" 'that period would be analogous to the period in *Huff* commencing with that defendant's arrest for auto theft' "].) Marquez did not seek, and was not entitled to, credit for presentence custody that was not attributable to the conduct that resulted in his sentence; Pruitt is likewise not entitled to presentence custody credit for such a period.

To be sure, had Pruitt's probation been summarily revoked immediately after his arrest on June 10, 2006, as often occurs when a probationer is arrested on felony charges, he could have earned approximately 300 days of additional presentence custody credit. However, as the trial court properly observed when denying the request for additional credit, Pruitt and his counsel could have prompted that revocation. Their failure to do so, as much as bureaucratic delay, is responsible for Pruitt's plight.

## DISPOSITION

The judgment is affirmed.

Woods, J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 16, 2008, S163045. Moreno, J., was of the opinion that the petition should be granted.