Filed 11/7/13 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

THE PEOPLE,

      Plaintiff and Respondent,

v.

EDGAR NUNEZ,

      Defendant and Appellant.

E055034

(Super.Ct.Nos. INF10000212 & INF1101571)

**ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION AND MODIFYING OPINION**

[NO CHANGE IN JUDGEMENT]

THE COURT

On the court's own motion, the above-entitled partially published opinion filed October 30, 2013, meets the standard for partial publication as specified in California Rules of Court, rule 8.1105(b) and 8.1110.

Therefore, the opinion is certified for partial publication, with the exception of part III.A. of the Analysis of the opinion (located on pages 5-16).

This modification does not effect a change in the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
                           J.

We concur:

HOLLENHORST
      Acting P. J.

CODRINGTON
      J.

1

MAILING LIST FOR CASE: E055034
People v. Edgar Nunez


~
Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502


~
Meredith S. White
Deputy Attorney General
P.O. Box 85266
San Diego, CA 92186-5266


~
Ronald Boyer
1563 Solano Ave., #246
Berkeley, CA 94707


~
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA 92101 2396

Filed 10/30/13 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055034 |
| v. | (Super.Ct.Nos. INF10000212 & INF1101571) |
| EDGAR NUNEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Anthony R. Villalobos, Judge. Affirmed with directions.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Meredith S. White and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only part III.B. of the Analysis of this opinion is certified for publication.

1

INTRODUCTION

A. *Case No. INF10000212 (Case 1)*

On February 3, 2010, an information charged defendant and appellant Edgar Nunez with one count of possessing a controlled substance for sale, methamphetamine, under Health and Safety Code section 11378 (count 1); and possessing paraphernalia used for unlawfully injecting and smoking a controlled substance under Health and Safety Code section 11364 (count 2).  With regard to count 1, the information further alleged that defendant possessed for sale a substance containing 28.5 grams or more of methamphetamine, and 57 grams or more of a substance containing methamphetamine, within the meaning of Penal Code section 1203.073, subdivision (b)(2).[1]

On June 4, 2010, defendant pled guilty to all counts.

The same day, defendant was sentenced to state prison for a total term of two years.  The trial court selected count 1 as the principal count and imposed the middle term of two years.  On count 2, the trial court imposed 180 days to run concurrent to count 1.  The trial court suspended execution of the sentence and placed defendant on supervised probation for three years with 365 days in local custody.  Defendant was awarded credit for time served for 16 actual days plus 16 days under section 4019, for a total of 32 days credit.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

B. *Case No. INF1101571 (Case 2)*

On August 10, 2011, an amended information charged defendant with one count of possessing a controlled substance for sale, methamphetamine, under Health and Safety Code section 11378 (count 1). With regard to this count, the information alleged that defendant was previously convicted of a felony violation of section 11378 of the Health and Safety Code, within the meaning of Health and Safety Code section 11370.2, subdivision (c). The information also alleged that defendant had one or more prior convictions for violating the Health and Safety Code, within the meaning of Penal Code section 1203.07, subdivision (a)(11).

On October 24, 2011, defendant pled guilty as charged and admitted the prior conviction enhancements.

C. *Sentencing in Both Cases*

1. <u>*Case 1*</u>

On October 24, 2011, because of defendant's guilty plea in Case 2, the trial court found defendant to be in violation of probation in Case 1, and executed the sentence of two years to be served in the Riverside County jail and to run concurrent with the sentence in Case 2. For the probation violation, defendant was awarded credit for time served of 292 actual days plus 163 days under section 4019, for a total of 455 days credit. Counsel objected to this calculation; it was overruled.

3

2. *Case 2*

The trial court sentenced defendant to custody for a total term of five years, to be served in the Riverside County jail under section 1170, subdivision (h), and to run concurrent to the sentence in Case 1.  The trial court imposed the middle term of two years on count 1, and three years to run consecutive for the enhancement.  The trial court executed the two-year term for count 1, but suspended execution of the three-year term granting supervised release under section 1170, subdivision (h)(5).  Therefore, defendant must serve two years in county jail on both cases, then complete his sentence on Case 2 with three years of supervised release.

In Case 2, defendant was awarded credit for time served of 109 actual days, plus 54 days under section 4019, for a total of 163 days credit.  Counsel objected to this calculation; it was overruled.

On November 16, 2011, defendant filed a notice of appeal in both cases.  On appeal, defendant claimed that the trial court erred in calculating his section 4019 conduct credits.  In an opinion filed on February 5, 2013, we modified defendant's conduct credits.  Moreover, in the appeal, the People claimed that the trial court miscalculated defendant's actual custody credit in Case 1.  We affirmed the trial court's award of custody credit in Case 1.

4

After the issuance of our opinion, defendant filed a petition for rehearing on February 21, 2013.  On March 5, 2013, we granted the petition[2] and directed the parties to file supplemental letter briefs addressing the issue raised in the petition.

For the reasons set forth *post*, we hold that we lack statutory authority to reduce defendant's mandatory supervised probationary period on appeal.

## II.

## STATEMENT OF FACTS

On January 5, 2010, defendant was searched by officers who found a glass pipe normally used to smoke methamphetamine, which contained burnt residue, and 5.1 ounces of methamphetamine.

On April 28, 2011, officers found 10.5 grams of methamphetamine, packaging, and a scale during a search of defendant's residence.

## III.

## ANALYSIS

*A.  First Opinion*

On appeal, defendant contended that the trial court erred in calculating his section 4019 conduct credits.  We agreed with defendant and awarded him additional custody credits.  Moreover, the People contended that the trial court erred in calculating the actual custody credit in Case 1.  We found that the trial court properly calculated the actual

---

[2]  Our opinion filed February 5, 2013, has been vacated since we granted defendant's petition for rehearing.  This opinion will serve as the new opinion.

custody credit in Case 1.  Since the opinion that discussed these issues was vacated, we hereby incorporate our opinion here.

1.  *Background*

In Case 1, defendant was arrested on January 5, 2010.  Defendant was released on his own recognizance on January 21, 2010; he spent 16 actual days in custody. Defendant did not serve any additional custody in this case prior to sentencing.  On June 4, 2010, the trial court imposed a two-year sentence but stayed its execution on the condition that defendant be placed on formal probation and serve 365 days in county jail. Defendant was awarded 16 actual credits and 16 conduct credits, for a total of 32 credits. Thereafter, defendant was remanded to the custody of the sheriff's department to serve the 365 days in jail.  Defendant's custody credits were applied to his 365 days of ordered custody.  Hence, defendant was to serve 333 days.

At the final sentencing hearing on October 24, 2011, defendant was given 292 actual credits and 163 conduct credits in Case 1.

In Case 2, defendant was arrested again on April 28, 2011.  This was a violation of the probation terms of Case 1.  It appears from the record that defendant was released after serving seven days of custody.[3]  On July 15, 2011, after defendant was arraigned, he was remanded to the custody of the sheriff.  He remained there until he was sentenced in

---

[3] Defendant received a total of 109 actual days of custody in Case 2.  From July 15 to October 24, 2011, defendant earned 102 of those credits.  Therefore, it appears that he must have earned the additional seven credits when he was first arrested in Case 2.  There is nothing in the record providing the exact dates that defendant was in custody.

6

both cases on October 24, 2011.  Defendant was in custody for 102 actual days.  In Case 2, defendant received 109 actual days in custody and 54 conduct credits.

2.  *Amendments to Section 4019*

In October 2009, the Legislature passed Senate Bill No. 18.  Among other things, Senate Bill No. 18 revised the accrual rate for conduct credits under section 4019, effective January 25, 2010.  Under the old version of section 4019, defendants earned two days of conduct credit for every four actual days served in local custody.  Under Senate Bill No. 18, certain defendants were eligible to earn two days of conduct credit for every two days of actual custody.

In September 2010, the Legislature amended section 4019 again in Senate Bill No. 76.  Senate Bill No. 76 restored the old version of section 4019.  Under Senate Bill No. 76, defendants serving presentence custody time were eligible for conduct credits at a rate of two days for every four days of actual custody time.  (§ 4019, subd. (f).)  Senate Bill No. 76 also added subdivision (g), which made the new decreased credits applicable only to defendants who committed crimes on or after the statute's effective date, September 28, 2010.  (§ 4019, subd. (g).)  Therefore, the change to section 4019 was explicitly prospective.  Senate Bill No. 76 also added section 2933, subdivision (e)(1), which stated:

"Notwithstanding Section 4019 and subject to the limitations of this subdivision, a prisoner sentenced to the state prison under Section 1170 for whom the sentence is executed shall have one day deducted from his or her period of confinement for every

7

day he or she served in a county jail, city jail, industrial farm, or road camp from the date of arrest until state prison credits . . . ."

New subdivision (e)(1) to section 2933 reincorporated the same behavioral standards from section 4019. Effectively, the Legislature granted the beneficial credit accrual rate to any defendant ultimately sentenced to state prison. Defendants sentenced to local custody, however, were only eligible for the section 4019 credits, and could not earn the more beneficial credits under section 2933, subdivision (e)(1).

In October 2011, sections 4019 and 2933 were amended again. (See Stats. 2011, ch. 15, § 1 [Assem. Bill No. 109]; hereafter referred to as Realignment.) The Governor signed Assembly Bill No. 109 in April 2011. Generally, Assembly Bill No. 109 shifted responsibility for both housing and supervising certain felons from the state to individual counties. With regard to the portions of the legislation that are relevant to this case, Realignment amended hundreds of felony offenses, including the offenses for which defendant was convicted, to be punishable by imprisonment in the county jail under section 1170, subdivision (h), instead of imprisonment in state prison. As a result, felons who were eligible to be sentenced under Realignment will serve their terms of imprisonment in local custody instead of state prison. (§ 1170, subd. (h)(3).)

With respect to custody credits, Realignment changed the accrual rate of section 4019 credits again. Defendants can now earn two days of credit for every two days served in custody. (§ 4019, subd. (f).) Section 2933, subdivision (e), was deleted. The new credits in section 4019 are expressly available only to defendants who committed their crimes after October 1, 2011. (§ 4019, subd. (h).) The Legislature also amended

8

subdivision (g), to clarify that the changes made to section 4019 under Senate Bill No. 76 still apply to defendants committed to custody for "a crime committed on or after the effective date of that act," which was September 28, 2010. (§ 4019, subd. (g).) Finally, section 4019, subdivision (h), states, in part: "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

During the briefing stages of this case, the California Supreme Court decided *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*). *Brown* held that amendments to section 4019, which took effect in January 2010, operated prospectively, and thus applied to prisoners who served their presentence time after the amendment took effect. (*Brown*, at p. 323.) In reaching this conclusion, the *Brown* court expressly found that applying section 4019 prospectively did not violate equal protection. The court reasoned that prisoners who serve time before and after a conduct credit statute takes effect are not similarly situated because "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response." (*Brown*, at pp. 328-329.)

3. *Actual Days in Custody in Case 1*

The trial court found that defendant had served 292 days in actual custody on Case 1. The People contend that the trial court erred in awarding 109 days of the 292 days, because defendant served the 109 days concurrently for both Case 1 and Case 2. The People argue that the 109 days should have been awarded for days in actual custody *only* in Case 2. We disagree.

9

In this case, there is no dispute as to *when* defendant was in custody. As the People note, and defendant agrees, defendant served a year as a condition of probation on Case 1. "The version of section 4019 in effect for the duration of [defendant]'s postsentence local custody time awarded two days of conduct credit for every two days of actual credit. Accordingly, when he was released from local custody, [defendant] should have had 365 days of credit comprised of half actual days, and half conduct credits. This would put [defendant]'s actual credits around 183 days."

Moreover, there is no dispute as to the number of days that defendant was in custody after the filing of the complaint in Case 2 and petition to revoke probation on July 7, 2011. The People point out, "[i]t seems [that] the trial court (relying on the probation department recommendation) added [defendant]'s actual credits from Case 1 (183) to his presentence actual credits from Case 2 (109), and arrived at 292 actual credits."

Defendant agrees that he spent 102 days in custody in both Case 1 and Case 2, which he served concurrently, after the filing of Case 2.[4]

The People, however, argue that the trial court erred in awarding to Case 1, as well as to Case 2, the 109 days of actual credit that had been served after the filing of the complaint and petition to revoke probation. The People argue that credit is inappropriate on both cases because defendant served concurrent terms. The rule, however, is whether

---

[4] As provided *ante*, defendant served 102 actual days concurrently for Case 1 and Case 2. The trial court awarded 109 days in Case 2 because he must have earned the seven credits when he was first arrested in Case 2.

"the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (§ 2900.5, subd. (b).)

Where probation has been revoked for exactly the same conduct that forms the basis of a new charge, then credit on both the new case and the case in which probation has been revoked is appropriate. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1485.) For this rule to apply, the prisoner must be held on both the probation revocation and on the new case. (*People v. Pruitt* (2008) 161 Cal.App.4th 637, 642, 644, 648-649, citing *People v. Huff* (1990) 223 Cal.App.3d 1100 and *People v. Williams* (1992) 10 Cal.App.4th 827.) Here, defendant was held on both Case 1 and Case 2 for the *same* conduct. Therefore, under section 2900.5, subdivision (b), the trial court properly awarded presentence actual custody credit for 109 days in both cases.

Notwithstanding, the People contend that "[b]ecause the time [defendant] spent in custody on Case 2 (109 days) was attributable to the second offense, and he received concurrent terms, those actual credits should not be counted on Case 1. California sentencing law applies a merger rule to *consecutive* sentences, but not to *concurrent* sentences." In support, the People cite to *In re Reeves* (2005) 35 Cal.4th 765 (*Reeves*), *People v. Nunez* (2008) 167 Cal.App.4th 761 (*Nunez*), and *In re Rojas* (1979) 23 Cal.3d 152 (*Rojas*); the cases, however, do not apply.

*Reeves* addressed whether section 2933.1, subdivision (a) (limiting conduct credits to 15% for a person convicted of a violent felony), applied to a nonviolent felony when a prisoner was serving sentences on both a violent and a nonviolent felony. (*Reeves*, *supra*, 35 Cal.4th at p. 768.) The Supreme Court held that the limitation applies to a sentence

11

for a nonviolent felony that is being served concurrently to a sentence for a violent felony, but only until the sentence on the violent felony was complete. (*Id.* at p. 780.) After that time, on the balance of the sentence on the nonviolent felony, the prisoner was no longer subject to that 15 percent limit on conduct credits. (*Id.* at pp. 780-781.) *Reeves* dealt with section 2933.1, not section 2900.5. *Reeves* does not apply because defendant does not make an argument that he should accrue credits at different rates, and that the sentences on his two cases are "merged," as they would be for a consecutive sentence. *Reeves* does not support the People's contention.

Similarly, *Nunez* is also inapplicable because it too did not address whether the defendant in that case should have received presentence credit when held simultaneously on a probation violation and a new charge. Instead, *Nunez* addressed whether, when held simultaneously on a probation violation on a violent felony and on a new nonviolent offense, the presentence credits on both cases would be subject to the 15 percent limit in section 2933.1, subdivision (c). (*Nunez*, *supra*, 167 Cal.App.4th at pp. 764-765.) Nothing in *Nunez* supports the People's argument here.

Furthermore, the People's reliance on *Rojas*, *supra*, 23 Cal.3d 152, is misplaced. In *Rojas*, the Supreme Court held that section 2900.5 applies to the award of presentence credit "'only where' custody is related to the 'same conduct for which the defendant has been convicted.'" (*Rojas*, at p. 155.) The court did not award credits in *Rojas* because "the defendant was simultaneously serving a prison term for a prior *unrelated* offense." (*Id.* at p. 154, italics added.) In this case, there is no dispute that the revocation of probation in Case 1 was for exactly the same conduct as the basis of the charge in Case 2.

12

Moreover, defendant was held in custody in both Case 1 and Case 2 from July 15, 2011. On July 15, 2011, the trial court minutes show, as to both Case 1 and Case 2: "Remanded to Custody of Riverside Sheriff."

The period of time from July 15, 2011, until the sentencing date of October 24, 2011, represents a period of 102 days. The trial court awarded credits for a period of 109 days actual custody.[5] Under section 2900.5, subdivision (b), and *People v. Johnson*, *supra*, 150 Cal.App.4th 1467, the trial court properly awarded 109 days actual custody credit in both Case 1 and Case 2. Therefore, defendant's actual custody credit of 292 days is affirmed.

4. *Conduct Credits Under* Brown *in Case 1*

Although both parties agree that defendant is entitled to day-for-day credits under section 4019, defendant's conduct credits must be recalculated under *Brown*, *supra*, 54 Cal.4th 314. In *Brown*, the Supreme Court held that the amendment to section 4019 effective January 25, 2010, does not apply to days served in custody prior to that date. (*Brown*, at p. 322.) The court held "that prisoners whose custody overlapped the statute's operative date (Jan. 25, 2010) earned credit at two different rates." (*Ibid.*) And, because prisoners serving time prior to January 25, 2010, are not similarly situated with prisoners serving time after that date, the court rejected an equal protection challenge to the differential treatment of persons serving time prior to January 25, 2010. (*Ibid.*)

---

[5] See footnotes 3 and 4, *ante*.

13

In Case 1, defendant was arrested on January 5, 2010, and was found at his sentencing on June 4, 2010, to have served 16 actual days in custody; these days were served prior to January 25, 2010. Those days of actual custody were prior to January 25, 2010, because defendant had been released on his own recognizance by January 21, 2010. Defendant remained out of custody until he was remanded on June 4, 2010.

Under *Brown*, *supra*, 54 Cal.4th 314, the credits on 16 days of actual custody should be calculated under the version of section 4019 effective prior to January 25, 2010. Under that law, on 16 days, defendant would receive two days of conduct credit for every four actual days served in custody. Therefore, defendant would receive eight days of conduct credit.

For the days of custody after January 25, 2010, defendant would receive day-for-day credit. Subtracting the 16 days from the total of 292 days of actual custody, the balance is 276 days in actual custody subject to the post-January 25, 2010, rule.

Accordingly, defendant's judgment should be modified to reflect (1) 16 days of actual custody and eight days of conduct credit for days served prior to January 25, 2010; and (2) 276 days of actual custody and 276 days of conduct credit for the days served after January 25, 2010, for a total of 576 days.

5. *Conduct Credits Under* Brown *in Case 2*

As provided in detail *ante*, defendant was arrested on April 28, 2011 in Case 2. He was sentenced on October 24, 2011. The trial court awarded defendant 109 actual days in custody and 54 conduct credits. Defendant contends that he is entitled to additional conduct credits under section 4019. The People agree.

14

As discussed *ante*, Realignment shifted responsibility for both housing and supervising certain felons from the state to individual counties. As a result, felons, like defendant, who are eligible to be sentenced under Realignment, will serve their terms of imprisonment in local custody, instead of state prison. Under the credits provision in effect at the time defendant committed his crime, defendant would have been entitled to both section 4019 credits (at a rate of two for four) and section 2933, subdivision (e)(1), credits (bringing the total conduct credits up to a day for a day) because he received a state prison sentence and does not appear to have a disqualifying prior conviction. However, because of Realignment, defendant was sentenced to a "state prison" sentence, but to be served in county jail. Denying defendant the section 2933, subdivision (e)(1) credits that he otherwise would receive would violate ex post facto principles.

Section 4019, subdivision (h), states, in part: "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." Moreover, denial of the credits would violate the constitutional prohibition against ex post facto laws. In *Weaver v. Graham* (1981) 450 U.S. 24, the United States Supreme Court found that Florida's application of a change in its conduct credit provisions was an unconstitutional ex post facto law because it effectively "chang[ed] the legal consequences of acts completed before its effective date." (*Id.* at p. 31.)

In this case, the application of Realignment to defendant effectively altered the consequences of his actions completed prior to the change in the law. The change in the law meant that defendant was housed in a local custody facility instead of state prison. Had defendant gone to state prison, he would have been entitled to the additional credits

15

under section 2933. Accordingly, under *Weaver v. Graham*, *supra*, 450 U.S. 24, defendant is entitled to an additional 55 days of conduct credit. The judgment in Case 2 should be modified to award a total of 218 credits (109 actual and 109 conduct).[6]

*B. New Issue: Modification of the Mandatory Supervised Probationary Period*

After we determined that defendant was entitled to additional custody credits, he filed a petition for rehearing. In the petition, defendant contended that "[a]ny excess days in custody that have been served by [defendant] should be credited against the term of his mandatory supervision pursuant to subdivision (h)(5) of section 1170." We granted defendant's petition and requested additional briefing from the parties. We directed the parties to address the following issue:

"Should the amount of time defendant was incarcerated, in excess of the period he would have spent had all custody and conduct credits to which he was entitled been applied, be deducted from his mandatory probation supervision under Penal Code section 1170, subdivision (h)(5)? Specifically, does the holding of *In re Ballard* (1981) 115

---

[6] In his opening brief, defendant, in the alternative, contended that the conduct credits should be recalculated under the equal protection clause of the United States Constitution. As discussed *ante*, the California Supreme Court held that amendments to section 4019 applied prospectively; hence, to prisoners who served their presentence time after the amendment took effect. (*Brown*, *supra*, 54 Cal.4th at p. 323.) In reaching this conclusion, the Supreme Court expressly found that applying section 4019 prospectively did not violate equal protection. The court stated that prisoners who served time before and after a conduct credit statute takes effect are not similarly situated because "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response." (*Id.* at pp. 328-329.)

Cal.App.3d 647 apply to adjust the release from mandatory supervision under Penal Code section 1170, subdivision (h)(5) as it does to adjust the release from parole?"

In this case, defendant was sentenced under "Realignment" as set forth in section 1170, subdivision (h). The portion of that section pertaining to "mandatory supervision" states, in pertinent part:

"For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. *The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceedings to revoke or modify mandatory supervision under the subparagraph shall be conducted pursuant to subdivisions (a) and (b) of Section 1203.2 or Section 1203.3.* During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court." (§ 1170, subd. (h)(5)(B)(i), italics added.)

By its own terms, section 1170, subdivision (h)(5)(B)(i), does not permit the remedy defendant seeks on this appeal. First, the section expressly states that the period of supervision is mandatory and may not be terminated early unless the court orders so under section 1203.2, subdivisions (a) and (b) (revoking probation) or section 1203.3 (modifying or terminating probation). There is nothing in the statute permitting

17

modification of the probation period under the circumstances presented here. Should defendant seek to have the mandatory supervision period shortened, he may file a motion in the trial court under section 1203.3.

Moreover, nothing in section 1170, subdivision (h), allows credits to be applied toward the sentence on mandatory supervision: "During the period when the defendant is under such supervision, *unless in actual custody related to the sentence imposed by the court*, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court." (§ 1170, subd. (h)(5)(B)(i), italics added.)

In this case, defendant accrued an excess of section 4019 credits while in custody; these credits do not apply to reduce the mandatory supervision under section 1170, subdivision (h).

Defendant, however, relies on *In re Ballard*, *supra*, 115 Cal.App.3d 647, to support his position. There, the petitioner sought to have the excess time he spent in custody credited toward his parole term. The court addressed the issue as follows:

"A defendant's prison release date is calculated by reference to the term of imprisonment assigned by the sentencing court (Pen. Code, § 1170 et seq.) or by the Board of Prison Terms (Pen. Code, § 1170.2), reduced by any applicable section 2900.5 credits for presentence time actually served, *Sage*[7] credits for good conduct and participation while in presentence custody, and credits for good conduct and participation while in prison ('section 2931 credits'; Pen. Code, §§ 2930-2932). Should application of

---

[7] *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*).

18

a credit to which the defendant is entitled be delayed until after his prison release date calculated without regard to the credit, or until so late in his prison term that the credit to be applied exceeds the amount of time remaining to be served a defendant will obviously be prejudiced:  his actual prison release date will be later than the prison release date to which the credit, timely applied, would have entitled him.  In such situations unless some adjustment is made, the delay in releasing the person from prison will delay his release from parole.  [¶]  Respondent suggests that such an adjustment can be made by deducting from his parole term the excess of the time petitioner actually spent in prison beyond the time he should have spent had all credits, including *Sage* credits, been timely applied.  Petitioner agrees." (*Id.* at p. 649, fn. omitted.)

The court then went on to state that "[d]eductions from the parole term are expressly authorized in other situations:  section 2900.5 credits may be applied against either or both of the period of incarceration and the parole period (Pen. Code, § 2900.5, subds. (a), (c); cf. *In re Sosa* (1980) 102 Cal.App.3d 1002, 1006), and where a defendant's prison release date has been delayed by administrative proceedings relevant to whether section 2931 credits should be denied, and the matter is resolved in his favor, the delay is deducted from the parole period.  (Pen. Code, § 2932, subd. (d).) Fundamental fairness requires that where misapplication of *Sage* credits has contributed to delay a prisoner's release date, those credits must be used to adjust the parole release date.  Respondent's suggestion would have this effect.  We approve it." (*In re Ballard*, *supra*, 115 Cal.App.3d at p. 650.)

Defendant claims that we should follow *In re Ballard*, *supra*, 115 Cal.App.3d 647, and "that any excess days in [local] custody that have been served as a result of [defendant] having completed his term in custody prior to this court's opinion awarding him additional credits be credited against the term of his mandatory [probation] supervision pursuant to subdivision (h)(5) of section 1170." By analogy, it appears that fairness would also dictate that where misapplication of section 4019 credits has contributed to delaying a prisoner's release date from local custody, those credits must also be used to adjust the probation release date. We, however, cannot render a decision by analogy since the statutes pertaining to parole release dates and probation release dates are different.

As the People have summarized, in *In re Ballard*, *supra*, 115 Cal.App.3d 647, "[t]he court found [that] it had statutory authority to deduct credits from the term of parole under Penal Code section 2900.5. (*Id.* at p. 650.)" Section 2900.5, subdivision (c), states that a "'term of imprisonment'" includes "any period of imprisonment imposed as a condition of probation or otherwise ordered, . . . and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute . . . ." Thus, under section 2900.5, credits may be applied to the *parole* period.

In this case, however, the reasoning in *In re Ballard*, *supra*, 115 Cal.App.3d 647, does not apply because no statutory authority exists to reduce a defendant's mandatory supervision period from *probation*, *not parole*, with excess credits. Here, unlike *In re Ballard*, defendant was sentenced to local custody and then released on mandatory

20

supervised probation.  Section 2900.5 is inapplicable.  As provided *ante*, nothing in section 1170, subdivision (h), allows for early termination of probation except as provided under sections 1203.2 and 1203.3.  Defendant's argument to reduce his mandatory supervision time is, therefore, denied.  Although we are sympathetic to defendant's argument, it is up to the Legislature to amend the law to allow us to apply section 4019 credits to reduce a mandatory supervised probationary period.

Defendant, however, is not without a remedy.  As provided *ante*, defendant can file a motion in the trial court under section 1203.3 to modify his term of probation.  Or, in the alternative, defendant can file a motion under section 2900.5, subdivision (a), to allow excess time spent in custody, including section 4019 credits, to be applied toward base fines and restitution fines at a rate of not less than $30 per day.

IV.

DISPOSITION

In case No. INF10000212, the trial court is directed to correct the October 24, 2011 minute order and the abstract of judgment filed October 26, 2011, to reflect an aggregate award of 576 days (consisting of 16 days of actual custody and eight days of conduct credit for days served prior to January 25, 2010; and 276 days of actual custody and 276 days of conduct credit for days served after January 25, 2010).  Moreover, in case No. INF1101571, the trial court is directed to correct the October 24, 2011 minute order to reflect an aggregate award of 218 days (consisting of 109 days of actual custody and 109 days of conduct credit).

21

The superior court clerk is directed to forward copies of the corrected minute orders and abstract of judgment to the appropriate agencies and entities.

In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

22