[Crim. No. 11022. Third Dist. Dec. 29, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBEN CONTRERAS, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ted W. Isles, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—Defendant appeals from the judgment entered after a jury convicted him of second degree murder. (Pen. Code, § 187.) In urging reversal, defendant asserts he was erroneously denied a free transcript of the testimony at a previous trial on the same charge. The claim is unsupported by the record. We will therefore affirm the judgment.

The judgment under review arose from the second trial of defendant on the same charge. The first trial (Feb. 27–Mar. 18, 1980) resulted in a mistrial when the jury was unable to reach a verdict. Retrial was set for May 12, 1980.

On March 19, 1980, defense counsel, the San Joaquin County Public Defender, moved "that the Court order a transcript of the first trial" at the court's expense limited to the testimony of the prosecution witnesses. The prosecutor did not oppose the request, but suggested the People had an equal right to a transcript of testimony of defense wit-

nesses at the court's expense. The court took the requests under submission and announced its ruling in open court the next day:

"The public defender has made a motion for a copy of the transcript of the prosecution's witnesses, requesting the Court to use court funds or court's budget to pay for the transcripts.

"Then the district attorney has filed a contrary [*sic*] motion, saying that if the public defender is entitled to transcript at the court expense, then, likewise, the district attorney would like to have a copy of the defendant's witnesses, a transcript at the court expense.

"I mentioned to you that last year, when Judge Darrah and I were working the criminal department, we did have a policy. And I wanted to review that policy.

"I had a meeting yesterday at noon at the Yosemite Club with the presiding judge, Chris Papas, Judge Martin and Bruce Avrit and this Court. And we discussed the entire situation of court-ordered transcripts at court expense. We have resolved the policy and it's being circulated today as follows: On public defender requests for court payment of transcripts, the Court is not passing on the merits. We're not saying that Mr. Contreras is not entitled to the transcripts. All the Court is saying is that as far as requesting the Court to use the court budget to pay for the transcript, that the Public Defender's Office does have a budget for their office. And that the transcripts should be paid from the budget from the office of the public defender. In the event the Public Defender's Office does not have sufficient budget monetary-wise to pay for these transcripts, then they should seek application from the Board of Supervisors for additional funds.

"So the motion is denied only as to—only as to this Court ordering funds to be paid for the transcripts for the defendant. So the motion is denied without prejudice, Mr. Guinan [defense counsel], without prejudice.

"Likewise, the district attorney. The district attorney has budgets. And for that reason, the same admonition applies, that we are not saying the District Attorney's Office is not entitled to the transcripts. All we are saying for the record is that if the district attorney does not have sufficient budget for that purpose, that you, likewise, will make applica-

tion for additional funds from the Board of Supervisors before any further step is taken.

"So both motions for transcripts, as far as court payment of transcripts, is denied without prejudice."

The public defender then indicated his budget contained an appropriation for transcript preparation but "there is not that much in that account." The court again suggested the public defender apply to the board of supervisors for the necessary funds because "the motion has only to do with payment. I have not said the transcript was not required at all." The court then offered that "if the Board of Supervisors denies your request for additional funds, then I think you should renew your motion again, ..." These proceedings took place on March 20, 1980. Retrial, set for May 12, actually commenced May 13, 1980.

No renewal of the request for transcript appears in the record nor does the record enlighten us as to whether or not counsel actually obtained and had available at trial a transcript of the requested testimony from the first trial.[1]

■ An indigent defendant facing retrial has a right to a free transcript of the previous trial unless the prosecution can show an informal alternative substantially equivalent to a transcript is available. (*People v. Hosner* (1975) 15 Cal.3d 60, 69 [123 Cal.Rptr. 381, 538 P.2d 1141].) Furthermore, "erroneous denial of an indigent defendant's motion for a free transcript of a prior trial requires automatic reversal." (*Hosner, supra*, at p. 70.)

■ Defendant contends that the trial court ruling of March 20 amounted to erroneous denial of a free transcript entitling him, per se, to a reversal. We do not so read the record. In those proceedings, almost eight weeks before the scheduled retrial, the trial court merely directed the public defender if possible to arrange payment for the transcript out of his own budget, augmented, if necessary, by a supplemental appropriation of county funds. From the record, it is clear to us that both the court and the public defender treated the motion as one to direct payment of the cost of transcript preparation from funds appropri-

---

[1]It does appear from defense counsel's remarks at trial and from his reading the testimony of a defense witness from the first trial into the record that the defense had access to at least some of the reported testimony at the first trial.

ated for the court's budget. The trial court's ruling did no more than deny that request without prejudice to its renewal if the alternate source of public funding could not be arranged. In so ruling the court implicitly acknowledged defendant's right to the requested transcripts at public expense.

There was no issue in the trial court over defendant's right to a free transcript. Rather the issue involved the source of payment for the transcript as between two governmental entities both funded by the county. Addressing the latter issue, defendant cites Government Code section 69952 which provides that "[i]n criminal cases in which the court specifically so directs, the fee ... for a transcript ordered by the court to be made shall be paid out of the county treasury on the order of the court." While Government Code section 69952 authorizes the court to direct payment from county funds, it does not preclude the court from first exploring an alternate method of public funding. Thus the trial court did not abuse discretion eight weeks before the scheduled commencement of retrial in directing the public defender first to attempt to arrange payment for the transcript from his own budget.

Other than to emphasize that defendant's right to a free transcript is paramount to the competing fiscal imperatives suggested by this record, there is no need for us to be drawn further into this internecine conflict because this record does not demonstrate that defendant's paramount right has been violated. Although the defendant's motion for court funding was denied almost eight weeks before scheduled retrial, defendant did not again seek the court's assistance in securing a transcript despite the court's express invitation to do so if alternate measures were unsuccessful. From this fact and the failure of the record unambiguously to disclose whether or not at trial defendant did indeed have a transcript, we conclude either that (1) defendant secured a transcript for use at trial, or (2) counsel did not pursue the means available to secure a transcript either from neglect or from an informed tactical preference to litigate an issue rather than to obtain a transcript, and thus was without a transcript at trial. Of course, if counsel's *negligent* failure to secure a transcript deprives a defendant of a crucial or potentially meritorious defense, defendant is not without a remedy. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

■ Defendant further contends the trial court failed to allow appropriate conduct credit on his presentence custody time pursuant to

*People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]. The record shows credit for 278 days pretrial custody and a "good time" award of 47 days. Full conduct credits would total 139 days (*People* v. *McMillan* (1980) 110 Cal.App.3d 682, 686 [167 Cal.Rptr. 924]). The transcript of the sentencing hearing reveals no dispute as to defendant's entitlement, but neither does it show the court's intention to award full credit. If the court intended to award full credit, the matter can be resolved on remand without further hearing simply by amending the abstract of judgment. If the court did not intend to award full credit, a new sentencing hearing limited to the question of appropriate conduct credits must be held. Any change in the number of days awarded must be reported to the Department of Corrections by certified copy of the amended abstract of judgment.

The cause is remanded for reconsideration of conduct credits due defendant. In all other respects, the judgment is affirmed.

Carr, J., and Sparks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1982. Bird C. J., was of the opinion that the petition should be granted.