Filed 9/11/24  P. v. Hinsdale CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL RAY HINSDALE,<br><br>    Defendant and Appellant. | A168957<br><br>(Napa County<br>Super. Ct. No. 20CR001534) |

This appeal arises from Michael Ray Hinsdale's unsuccessful request to the trial court to correct presentence custody credits.  While on probation in the present case (the burglary case), Hinsdale committed new offenses (the vehicle theft case).  After his arrest in the vehicle theft case and summary revocation of probation in the burglary case, he spent some nine months in jail before being placed on probation in both cases.  When subsequent probation violations led to termination of probation and execution of prison sentences in both cases, presentence custody credit for the nine-month period was awarded in the vehicle theft case but not in the burglary case.  Appellate counsel in the burglary case asked the trial court to correct the credits award after discovering what he believed to be the erroneous omission of 308 credits.  The trial court dropped the matter from calendar when the

1

district attorney and trial counsel represented that no correction was needed, effectively denying the request for correction.

Hinsdale contends the trial court did not properly consider the request for correction and he is entitled to additional credit in the burglary case. As we will explain, we agree on both points. Because the relevant period of confinement appears to have been attributable to both the new offenses and an unrelated violation of probation in the burglary case, and Hinsdale was sentenced in a single proceeding to concurrent terms in the two cases, we conclude he is entitled to credit for the period at issue in the burglary case as well as in the vehicle theft case. We will reverse the trial court's order and remand for confirmation of the number of credits due.

Hinsdale additionally argues he is currently serving an unauthorized sentence due to his burglary conviction improperly being treated as a violent felony and, therefore, he must be resentenced and immediately released for time served. This argument is not properly cognizable on this appeal and, in any event, is meritless.

## BACKGROUND

### I.

### *Factual Background for the Present Burglary Case*

As described in the probation report, at approximately 6 p.m. on July 11, 2020, Napa County Sheriff's deputies responded to a reported burglary at the Newton Hall student dorms at Pacific Union College. The reporting party, Dean Hernan Granados, said a white male adult and white female adult had broken a window to enter the dorm and attempted to steal a mattress, then fled in a blue van. Granados later reported several other items had been stolen from the lobby, including a full size couch, a 72-inch flat screen television and a 56-inch flat screen television that had been

2

mounted on the wall, and a wooden table. He also indicated there was some damage to sheetrock surrounding a dollar bill change machine in a hallway and pry marks that appeared to be the result of an attempt to remove the machine from the wall. Granados told the deputies that he was living in an apartment within the Newton Hall building and showed them the location where he had exited his apartment and seen the suspects attempting to load a mattress onto their vehicle; two mattresses and the couch from the lobby were on the ground. Although the majority of the students were not currently living in the dorm, there was one student still living there at the time of the incident, who was referred to as the "confidential victim." It was subsequently determined that the suspects were Hinsdale and his girlfriend, Nicole Callahan, and Hinsdale admitted the theft and showed deputies one of the stolen televisions at his residence.

## II.

### *Procedural Background*

Hinsdale was arrested and booked on July 13, 2020, and apparently released on July 14. An amended complaint filed on September 24, 2020, charged him and Callahan with first degree burglary with a person present (Pen. Code, §§ 459, 460, subd. (a), 667.5, subdivision (c)(21)),[1] second degree burglary (§ 459, 460, subd. (b)), looting (§ 463, subd. (b)), grand theft of personal property (§ 487, subd. (a)) and felony vandalism (§ 594, subd. (b)(1)), and Hinsdale was taken into custody on that date. On November 18, 2020, pursuant to a plea agreement, Hinsdale pleaded no contest to first degree

---

[1] Further statutory references will be to the Penal Code unless otherwise specified.

3

burglary and felony vandalism and admitted that the first degree burglary conviction was a violent felony under section 667.5, subdivision (c).[2]

On December 18, 2020, the trial court sentenced Hinsdale to a prison term of two years eight months (the low term of two years for the burglary plus a consecutive one-third middle term of eight months for the vandalism), suspended execution of sentence and granted three years of formal probation. Among other conditions of probation, he was ordered to serve 210 days in jail, with probation having discretion to release him to a residential treatment program.

Hinsdale was in a residential treatment program from February 5, 2021, to March 22, 2021, when he was discharged for violating program rules. The next day, March 23, 2021, he stole a BMW that was left running in front of the victim's house and took from the car the victim's iPhone and credit card, which he used to purchase cigarettes. He was arrested the same day. On March 25, 2021, the probation officer filed two petitions to revoke probation in the burglary case, one based on Hinsdale's failure to complete the residential treatment program and the other based on his commission of the new offenses. At arraignment on the probation violations on March 25, Hinsdale's request for release on own recognizance was denied and he was returned to custody without bail. He admitted the probation violations on August 20, 2021.

---

[2] At the same November 18, 2020 hearing, Hinsdale pleaded no contest in two driving under the influence cases involving offenses committed in August and September 2020, and admitted that his commission of the present burglary violated probation granted in a prior case in February 2019. These cases were addressed at subsequent hearings on the burglary and vehicle theft cases but are not relevant to the issues on this appeal and will not be further discussed.

Also on August 20, 2021, in the vehicle theft case, Hinsdale entered no contest pleas to three felonies and two misdemeanors and admitted the burglary conviction in the present case as a prior strike. The plea agreement in the vehicle theft case is not in the present record on appeal but is described in a subsequent probation report as specifying a four-year eight-month "state prison lid in all matters."

At a hearing on October 27, 2021, the court addressed both cases. In the vehicle theft case, the court granted Hinsdale's motion to strike the prior conviction. In the burglary case, the court indicated it was likely to impose a four-year or four-year eight-month execution suspended sentence and obtained Hinsdale's agreement to waive enforcement of the two-year eight-month term that had been imposed with execution of sentence suspended when he was initially granted probation. The court referred the matter back to probation for recommendations on terms and conditions of probation.

On December 3, 2021, the court revoked and reinstated probation in the burglary case, and modified the execution suspended sentence to four years. In the vehicle theft case, the court placed Hinsdale on probation with an execution suspended sentence of two years on each of the three counts, concurrent with each other and with the sentence on the burglary case. Hinsdale agreed to waive 100 days of credit in the vehicle theft case (*Johnson* waiver).[3] In both cases, the court authorized Hinsdale's release to probation

---

[3] "A *Johnson* waiver is a waiver of a statutory right to credit for time served against a subsequent county jail or state prison sentence pursuant to section 2900.5." (*People v. Arnold* (2004) 33 Cal.4th 294, 307; *People v. Johnson* (1978) 82 Cal.App.3d 183 (*Johnson*). The probation officer had requested this waiver as a condition of probation and the court required it "to continue to give him motivation to do well and succeed."

for placement in the Delancey Street program, which he subsequently began on December 16.

On October 11, 2022, the probation officer filed a petition to revoke probation in the burglary case based on Hinsdale's termination from Delancey Street and from a subsequent program for consuming alcohol.[4]

On March 24, 2023, the court terminated probation in both the burglary and vehicle theft cases. In the burglary case, the court ordered the previously suspended four-year prison sentence into effect, with credit for 585 days of actual custody plus 31 days of conduct credit, a total of 616 days. In the vehicle theft case, the court imposed the previously suspended sentence of concurrent two-year terms on each of the three felony counts, concurrent with the sentence in the burglary case, with a total of 664 credits, 621 actual and 43 conduct.[5]

On August 16, 2023, the trial court received a letter from Hinsdale's appellate counsel requesting correction of the award of custody credits in both the burglary and vehicle theft cases. Counsel believed Hinsdale had been "shorted" 308 days of credit.

---

[4] The revocation petition itself is not in the record for this appeal but appears in the record for A168080, which is Hinsdale's subsequently abandoned appeal from the revocation of probation.

[5] Hinsdale subsequently filed a motion to recall sentence in which he asked the court to resentence him to the two-year eight-month suspended execution term initially imposed in the burglary case in December 2020. The trial court denied the motion after a hearing on June 2, 2023. Hinsdale filed a notice of appeal from the June 2, 2023 order on June 5, 2023. He later filed a notice of abandonment requesting dismissal of that appeal, and it was dismissed on August 15, 2023.

6

At a hearing on September 1, 2023, the prosecutor and Hinsdale's trial counsel agreed that the credit award was correct and the court dropped the matter from calendar, effectively denying the request for correction.

On October 12, 2023, Hinsdale filed a notice of appeal.

## DISCUSSION

### I.

### *Hinsdale Is Entitled to Additional Presentence Credit.*

Hinsdale contends that he is entitled to additional credit for pretrial confinement and that he was deprived of due process by a summary hearing at which there was no serious review of the accuracy of the initial credits award. His opening brief does not address the specific credits he believes were omitted from the court's calculations; it focuses entirely on arguments that the trial court failed to give him or appellate counsel notice of the hearing on appellate counsel's request for correction of credits and simply accepted the attorneys' assertion that no correction was necessary.

The People respond that there was no due process violation and Hinsdale failed to carry his burden of demonstrating his entitlement to additional credit by failing to identify the "source" of the claimed "shortfall" of 308 credits. The People further argue that, assuming Hinsdale was referring to the period of confinement from March 23 to December 15, 2021, he was not entitled to credit in the present case because the confinement was attributable solely to his offenses in the vehicle theft case. In his reply brief, Hinsdale confirms that this period from his arrest in the vehicle theft case to his release to Delancey Street is the period of confinement at issue (the disputed period).

As we will explain, it appears from the transcript of the hearing on September 1, 2023, that although the error appellate counsel sought to have

7

corrected was in the present burglary case, the discussion addressed only credits in the vehicle theft case. The trial court erred in failing to properly consider the calculation error brought to its attention by appellate counsel, and Hinsdale is entitled to the additional credit sought in the present case.

## A. Background

The probation report for the March 24, 2023 sentencing hearing includes a chart for each of Hinsdale's pending cases, each chart showing the presentence custody and conduct credits in that particular case. The chart for the burglary case lists a total of 603 credits from Hinsdale's arrest on July 13, 2020, to March 13, 2023—574 days actually served plus 29 conduct credits.[6] The breakdown showing credits for each period in jail or in a treatment program makes clear that although the chart lists credits for the disputed period from March 23, 2021, to December 3, 2021, these credits are not included in the totals: The listed days actually served total 574 only if the 256 credits for the disputed period are subtracted,[7] and while the chart lists 256 conduct credits for the disputed period, these are obviously not included in the stated total of 29 conduct credits (which the chart shows as associated with two other periods in jail).

Since the March 24, 2023 sentencing hearing was 11 days after the last date of confinement shown on the probation report charts (March 13, 2023), the credits awarded in the burglary case at the hearing added 11 for actual

---

[6] As Hinsdale was convicted of first degree burglary with a person present, which is a violent felony (§ 667.5, subd. (c)(21)), his presentence custody credits were limited to 15 percent of actual days served. (§ 2933.1, subd. (c).)

[7] The total of all credits for days actually served listed on the chart, including those for the disputed period, would be 830.

custody and a corresponding 2 conduct credits, bringing the award to 585 actual custody credits and 31 conduct credits, a total of 616 (not including the 256 credits for the disputed period). The 664 total credits awarded in the vehicle theft case, 621 for actual days served and 43 conduct credits,[8] include the 256 actual days credits for the disputed period.[9]

Appellate counsel sought correction of the credits award pursuant to section 1237.1,[10] which requires a defendant to seek correction of an error in calculating presentence custody credits in the trial court and authorizes doing so "informally in writing." Counsel calculated that Hinsdale was

---

[8] As earlier noted, Hinsdale's conduct credits in the burglary case are limited to 15 percent because his offense is a violent felony. (§§ 667.5, subd. (c)(21), 2933.1.) This limitation ordinarily would not apply in the vehicle theft case. At the sentencing hearing, however, the probation officer explained that although previous calculations had indicated one-for-one conduct credits in the vehicle theft case, the probation department had realized that because Hinsdale was being sentenced concurrently with the burglary case and "[b]ecause he's getting sentenced with a violent, he gets treated the same"—that is, his conduct credits were limited to 15 percent as in the burglary case.

[9] The chart for the vehicle theft case reflects that Hinsdale was released to Delancey Street (the end of the disputed period) on December 15 rather than December 3 (as indicated on the burglary case chart), making the disputed period 268 days rather than 256. At the September 1, 2023 hearing on the request for correction of credits, the prosecutor acknowledged that Hinsdale was in custody between December 3 and 15, 2021.

[10] Section 1237.1 provides, "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the calculation of presentence custody credits upon the defendant's request for correction.

entitled to 308 more credits than the 616 awarded in the burglary case.[11] Although not stated in counsel's letter, the 308-credit "shortfall" reflected in this calculation corresponds to the 268 credits shown on the probation report chart for the vehicle theft case for days actually served in the disputed period from March 23, 2021, to December 15, 2021, plus 40 conduct credits (15 percent of 268). The disputed period, again, was the period when Hinsdale was in custody after his arrest in the vehicle theft case and summary revocation of probation in the burglary case.

**B. The September 1 Hearing**

Appellate counsel's section 1237.1 letter referenced both the burglary and the vehicle theft cases, but the "shortfall" of 308 credits he pointed out was only in the burglary case. Trial counsel and the trial court recognized this: Trial counsel observed that as far as he had seen, the letter was filed only in the burglary case and the court stated that "[t]here was only a request for correction in 1534 [case No. 20CR001534, the burglary case]; was the only

---

[11] Counsel calculated a total of 546 credits (actual custody plus conduct) for time in jail plus 378 credits for time in treatment programs, for a grand total of 924.

Counsel's letter to the trial court also noted several errors aside from the claimed 308 credit shortfall that, as we have noted, were corrected in the trial court. One of these was the change from December 3, 2021, to December 15, 2021, for Hinsdale's release to Delancey Street, which was corrected by the probation officer as to the credits for the disputed period awarded in the vehicle code case. Another was the correction of the one-to-one conduct credits listed on the probation report charts to reflect the 15 percent limitation imposed by section 2933.1, which was addressed at sentencing. A third was the addition of credit for the days from the last date included in the probation report charts to the date of the sentencing hearing, which was also addressed at sentencing.

one the appellate attorney flagged what he viewed as an error in the time credit calculation."

Nevertheless, the only credits discussed at the hearing pertained to the vehicle theft case. After the court asked about the "missing time" between the end of Hinsdale's jail custody on December 3, 2021, and the beginning of his time at Delancey Street on December 16, 2021, the prosecutor stated that it was "an additional 11" but that he and trial counsel thought "it's actually already been accounted for." This was true for the vehicle theft case, for which the probation report chart showed December 15 as the end-date for the jail period, but not for the burglary case, for which the chart showed December 3. The prosecutor went on to explain, "he has 289 credits in custody. If we add 44 days on that at 15 percent per [section] 4019, that plus the 332 days for the programing would lead us to the 664, I believe." As earlier indicated, 664 is the number of credits awarded in the vehicle theft case. The other numbers the prosecutor referenced correspond to numbers on the probation report's chart for the vehicle theft case, modified to bring the days current to the date of the sentencing hearing: The chart for the vehicle theft case shows 278 days in jail up to March 13, which became 289 as of sentencing on March 24, and shows 332 days in residential treatment programs. These numbers do *not* correspond to any on the chart for the burglary case.[12] Finally, trial counsel observed, "I will say it appeared to me that [appellate counsel] was off by exactly 50 days, which would be, if he miscalculated the Johnson waiver, in actual days versus actual plus

_____

[12] The chart for the burglary case, excluding the disputed period for which Hinsdale was not awarded credit, shows 196 actual jail custody days (207 after addition of the days to the sentencing hearing) and 378 program days.

11

[section] 4019, which I think is what happened." The *Johnson* waiver, as earlier noted, was in relation to the vehicle theft case, not the burglary case.[13] Neither counsel nor the court made any reference to numbers corresponding to credits awarded in the burglary case or to the 308-credit shortfall claimed in appellate counsel's letter.

Neither of the parties address the fact that the discussion at the hearing—such as it was, comprising barely three pages of the reporter's transcript—never addressed the shortfall in credits identified in appellate counsel's letter or calculation of credits in the present case. Neither Hinsdale nor appellate counsel were present; it appears from the record that notice of the hearing was provided only to the prosecutor, trial counsel and the probation department, and the probation officer does not appear to have been present. Trial counsel told the court that he did not have Hinsdale's authority to appear but felt comfortable proceeding in Hinsdale's absence because "he has since filed an abandonment of appeal."[14] But, as earlier noted (see footnote 4, *ante,* p. 6), the abandonment of appeal was in A168080,

---

[13] The credits chart in the vehicle theft case reflects the 100-day waiver by listing 50 days actually served and 50 conduct credits but not including these amounts in the total time credits. It is not clear what trial counsel was referring to in saying appellate counsel's calculation was 50 days off, since appellate counsel claimed Hinsdale was due 308 additional credits. The significance of trial counsel's comment for us is not its accuracy but the fact that he was referring to numbers applicable only to the vehicle theft case when the issue appellate counsel raised pertained to the burglary case.

[14] Trial counsel stated, "I don't have his authority to appear [section] 977, but this was—he has since filed an abandonment of appeal, and so I feel comfortable proceeding in his absence."

Section 977 requires a defendant to be present at proceedings in a felony case absent a waiver in accordance with the provisions of the statute or specified findings by the court. (§ 977, subds. (b)(1), (d)(1).)

Hinsdale's appeal from the denial of his motion to recall sentence and resentence him to the term originally imposed in the burglary case in 2020. Trial counsel did not explain how dismissal of that appeal pertained to his representation of Hinsdale without authority with regard to the credit calculation.

The People argue Hinsdale's due process rights were not violated by the absence of notice to him or appellate counsel of the September 1, 2023 hearing because trial counsel represented Hinsdale and Hinsdale's personal knowledge was not relevant. The People offer *People v. Shabazz* (1985) 175 Cal.App.3d 468 as addressing a similar situation. There, after granting the defendant custody credits at sentencing, the trial court amended the judgment to delete the credits. (*Id.* at p. 470.) On appeal from the trial court's denial of his motion to vacate the order deleting the credits, the defendant argued that amending the judgment without a hearing at which he could be present and represented by counsel violated his right to due process. (*Id.* at p. 474.) *Shabazz* held the judgment was properly amended: The defendant was not entitled to the credits because he was already serving a term of incarceration for a prior offense (*id.* at p. 470) and granting the credits resulted in an unauthorized sentence that could be amended at any time. (*Id.* at pp. 473-474.) The defendant's due process argument was rejected because "only a question of law was involved"; "the pertinent facts had been found at the time of the original sentencing when appellant had a hearing and was represented by counsel"; the court "had no choice but to correct the sentence" when it was brought to the court's attention; and correction of the judgment caused "no immediate loss of liberty" because the defendant was already "serving two other substantial sentences." (*Id.* at p. 474.) *Shabazz* concluded that "[u]nder all the circumstances, [the

13

defendant's] due process rights [were] fully protected by the instant opportunity for appellate review of the trial court's action." (*Ibid.*)

The People assert that here, too, the claimed error could be resolved by reviewing the file. But this ignores the facts that the error raised by appellate counsel was never reviewed at the hearing, the prosecutor's explanation of why no correction was needed was based on the credit calculation for the vehicle theft case, not the burglary case, trial counsel also referred only to credits in the vehicle theft case, and trial counsel, who expressly stated he did not have Hinsdale's authorization to appear, disagreed with appellate counsel's assertion of error.

The People argue that the trial court could have resolved the matter without holding a hearing at all, citing *People v. Contreras* (1981) 127 Cal.App.3d 248, 253-254, and *People v. Dominguez* (1981) 121 Cal.App.3d 481. *Contreras* stated that no hearing would be required on a remand for reconsideration of conduct credits *if* the trial court intended to award full credit, but that if court did not intend to award full credit, a new sentencing hearing would be necessary. (*Contreras,* at pp. 253-254.) *Dominguez* agreed with the defendant that he was entitled to 228 rather than 220 days of custody credit and remanded with directions for the trial court to prepare a modified abstract of judgment. (*Dominguez,* at pp. 509-510.) These cases support the unremarkable proposition that where the necessary modification of judgment has been established, the trial court may implement the appellate court's instructions without further hearing.

Here, appellate counsel informed the court of what he believed to be an error in calculating the credits in the present case. Indeed, as we will see, the parties dispute whether Hinsdale was entitled to a significant number of credits that were awarded in the vehicle theft case but not in the present

14

case.  Moreover, regardless of whether the trial court had to hold a hearing, in fact it did so—and then accepted the prosecutor's and trial counsel's assurance that there was no error without any consideration of the error that the hearing was held to address.  In these circumstances, we cannot accept the People's assertion that the trial court responded appropriately to appellate counsel's letter.

### C. Entitlement to Credits

#### 1. *Governing Principles*

Section 2900.5 provides, as pertinent here:  "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, . . . rehabilitation facility, . . . or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order . . . shall be credited upon his or her term of imprisonment . . .

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted.  Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

"[T]he purpose of section 2900.5 is to ensure that one held in pretrial custody on the basis of unproven criminal charges will not serve a longer overall period of confinement upon a subsequent conviction than another person who received an identical sentence but did not suffer preconviction custody."  (*People v. Bruner* (1995) 9 Cal.4th 1178, 1183-1184 (*Bruner*); *In re Rojas* (1979) 23 Cal.3d 152, 156 (*Rojas*).)  The statute "is not intended to bestow the windfall of duplicative credits against all terms or sentences that

15

are separately imposed in multiple proceedings . . . even where, while serving other sentences, the defendant was also incidentally subject to restraint based on 'proceedings related to the same conduct' for which he now seeks sentence credit." (*Bruner,* at pp. 1191-1192.) Accordingly, "a period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*In re Joyner* (1989) 48 Cal.3d 487, 489 (*Joyner*).) "The burden of establishing the strict causation, 'but for' test of *Joyner* is with the appellant who claims credit for time in custody on other charges." (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1105 (*Huff*).)

As *Bruner* noted, however, it is an "accepted principle that when concurrent sentences are imposed at the same time, presentence custody is credited against all." (*Bruner, supra,* 9 Cal.4th at p. 1192, fn. 9, italics omitted.) "[U]nder Penal Code section 2900.5 . . . when concurrent sentences are imposed at the same time for unrelated crimes, the defendant is entitled to presentence custody credits on each sentence, provided he is not also in postsentence custody for another crime." (*People v. Kunath* (2012) 203 Cal.App.4th 906, 908-909 [second offense committed while defendant released on bond in unrelated case; pleas in both cases entered on same date and concurrent terms imposed at single sentencing hearing] (*Kunath*).)

### 2. *Analysis*

The People maintain Hinsdale was not entitled to credit in the present case for the 268 days of custody (plus conduct credits) from March 23 to

16

December 15, 2021, because his confinement was due to his commission of the vehicle theft, not conduct related to the burglary case. Hinsdale challenges this characterization, arguing that because he repeatedly failed to complete rehabilitation programs, his new vehicle theft case "may have served as an additional basis for revocation but the picture was larger."

The cases the People rely on fail to support their position. *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1485, explained that "[a] defendant is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period. A criminal sentence may not be credited with jail or prison time attributable to a parole or probation revocation that was based only in part upon the same criminal episode. (*Bruner, supra,* 9 Cal.4th at p. 1191.) A defendant must prove that the conduct which led to the conviction was a 'dispositive' or ' "but for"' cause of the presentence custody. (*Id.* at p. 1180.)"

In *Johnson,* the defendant was on probation when he committed the offenses for which he was convicted and sentenced. The People argued the trial court properly denied presentence custody credits in the *new* case because the confinement was due to a probation violation. (*Johnson, supra,* 150 Cal.App.4th at p. 1485.) Disagreeing, the *Johnson* court noted that the probation report indicated the violation was based upon the defendant's commission of the new offenses. (*Ibid.*) Because the defendant was found in violation of probation based only on the crimes for which he was convicted, the conduct that led to his conviction was the " ' "but for" ' cause of his presentence custody" and he was entitled to credit. (*Ibid.*)

Unlike *Johnson,* and contrary to the People's characterization, the record in the present case does not make clear that Hinsdale's custody from

17

March 24 to December 15, 2021, was "solely" attributable to the vehicle theft arrest (as to which he did receive credit). The vehicle theft was committed on March 23, 2021, the day after Hinsdale left the treatment program that was a condition of his probation in the burglary case; he was arrested on March 23 and on March 25 the probation officer filed in the burglary case both a petition to revoke probation based on Hinsdale's commission of the new offenses and a petition to revoke probation based on his failure to complete the residential treatment program. Hinsdale was remanded without bail and later admitted the violations alleged in both petitions.

The People offer *Huff, supra,* 223 Cal.App.3d 1100 and *People v. Pruitt* (2008) 161 Cal.App.4th 637 (*Pruitt*) as "instructive." Both of these cases held that defendants who were ultimately sentenced to prison on revocation of probation in prior cases due to charges of new offenses were not entitled to presentence credit for custody based on the new offenses because the conduct in the new offenses "was clearly and simply not the same conduct for which [each defendant] had been convicted and sentenced." (*Pruitt,* at p. 649; *Huff,* at p. 1105.) In both *Huff* and *Pruitt*, the defendants were "held in custody solely on [the new] charges for a period prior to summary revocation of their probation and ultimately sentenced on the underlying convictions not the new charges, albeit for engaging in the conduct that led to the filing of the new charges." (*Pruitt,* at pp. 643; *Huff,* at p. 1105.) In both cases, the new charges were ultimately dismissed. (*Pruitt,* at p. 640; *Huff,* at pp. 1102-1103.)

Here, Hinsdale was arrested for new offenses in the vehicle theft case and remanded without bail on petitions to revoke probation in the burglary case that were based on his failure to complete a residential program required as a condition of probation and on his commission of the new

18

offenses.  He was ultimately sentenced on both cases at the same hearing to concurrent prison terms but received credit for the disputed period of custody only in the vehicle theft case.

*Huff* discussed several discrete portions of the defendant's time in presentence custody.  The People rely on *Huff*'s conclusion that the defendant was not entitled to credit for presentence custody from the time of his arrest on the new charges until the new charges were dismissed because this custody "was attributable to the new charge, not to the narcotics conviction that had led to grant of probation more than a year before."  (*Huff, supra,* 223 Cal.App.3d at p. 1105.)  By contrast, the defendant was entitled to credit for presentence custody after dismissal of the new charges because the sole basis for his continued custody was the remand order in the prior case. (*Ibid.*)  Of most significance to us, however, the defendant had been remanded without bail on summary revocation of probation in the prior case four weeks before the new charges were dismissed.  (*Id.* at p. 1106.)  For this period of overlap, when custody was due to both cases, *Huff* concluded that the defendant had satisfied the "strict causation test of *Joyner*" because, since he was being held without bail in the prior case, he could not have secured release even if he had made bail in the new one.  (*Ibid.*)  Similarly, *Pruitt* noted that the defendant received presentence credit for the period between the date probation was summarily revoked and he was remanded without bail and the date the new charges were dismissed, when he was "in custody for both the pending new charges and the alleged probation violation based on the [conduct underlying the new charges]."  (*Pruitt, supra,* 161 Cal.App.4th at pp. 640, 649.)

Unlike the facts in *Huff* and *Pruitt,* in which there was a significant period of time between the defendants' arrest on new charges and the

19

summary revocation of probation in their earlier cases, Hinsdale was remanded without bail upon summary revocation of probation on March 25, 2021, two days after his arrest on the new charges in the vehicle theft case. Under the reasoning of *Huff* and *Pruitt,* Hinsdale's custody from this point on was attributable to the burglary case because he could not have secured release even if he had been able to make bail in the vehicle theft case. Indeed, *Pruitt* noted, "[t]o be sure, had Pruitt's probation been summarily revoked immediately after his arrest on June 10, 2006, as often occurs when a probationer is arrested on felony charges, he could have earned approximately 300 days of additional presentence custody credit." (*Pruitt, supra,* 161 Cal.App.4th at p. 649.)

Neither of the parties address the complexities presented by a " 'multiple restraint' " case such as Hinsdale's, where credit is being sought for a period of custody with "multiple, unrelated causes." (*Bruner, supra,* 9 Cal.4th at p. 1180.)[15]

The strict causation rule applied in *Joyner* and *Bruner,* and relied on by the People in the present case, was established in cases where the defendant seeking credit against the sentence for a new crime was already serving a sentence for a prior offense. The court's analysis in these cases began with its interpretation of section 2900.5 in *Rojas,* in which the defendant was convicted of murder and sentenced to a term concurrent with a term he was

[15] "Although the statutory language in section 2900.5 'may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts.' (*People v. Adrian* (1987) 191 Cal.App.3d 868, 874.) 'Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is "difficult to interpret and apply." [Citation.] As we have noted, in what is surely an understatement, "[c]redit determination is not a simple matter." ' (*Id.* at pp. 874-875.)" (*In re Marquez* (2003) 30 Cal.4th 14, 19.)

already serving for an unrelated manslaughter conviction. (*Rojas, supra,* 23 Cal.3d at pp. 154-155.) *Rojas* held the defendant was not entitled to presentence credit in the murder case because he "would necessarily have served that . . . period in state prison for the original manslaughter conviction" and "was already receiving credit for that period against his original conviction." (*Id.* at p. 155; *Joyner, supra,* 48 Cal.3d at pp. 491-492; *Bruner, supra,* 9 Cal.4th at pp. 1183-1184.) *Rojas* stated that the "sensible inference" to be drawn from the language of section 2900.5, subdivision (b), "is that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Rojas,* at pp. 155-156.)

In *Joyner*, after the defendant was arrested for offenses committed in Florida, a hold was placed on him at the request of California, where arrest warrants had previously been issued for offenses committed there. (*Joyner, supra,* 48 Cal.3d at pp. 489-490.) The defendant was convicted and sentenced for the Florida offenses, with credit for presentence custody. (*Id.* at p. 490.) While continuing to serve the Florida term, he was extradited to California, where he entered negotiated guilty pleas and was sentenced to a concurrent term. (*Ibid.*) He was not entitled to presentence custody credit against the California sentence because all the time he served from the date the California hold was imposed in Florida to his sentencing in California had been credited against the Florida sentence. (*Id.* at p. 489.) As to the presentence custody in Florida, the defendant did not demonstrate he could have obtained release if the California hold had not been placed, and once he began serving the Florida sentence, the custody was unavoidable and therefore not attributable to the California proceedings. (*Id.* at p. 492.)

21

In *Bruner,* the defendant's parole was revoked based on several parole violations, then while serving his revocation term—for which he received presentence credit—he was charged with and pleaded guilty to possession of cocaine found at the time of his arrest for the parole violations. (*Bruner, supra,* 9 Cal.4th at p. 1181.) The defendant was not entitled to credit against his new sentence on the drug offense for the time in custody from arrest to sentencing because although that custody was attributable *in part* to the conduct that led to the new sentence, he had not shown he would have been free of custody but for that conduct, since he was in any event in custody due to unrelated parole violations. (*Id.* at pp. 1181, 1191.) Regarding the purpose of section 2900.5 "to ensure that one held in pretrial custody on the basis of unproven criminal charges will not serve a longer overall period of confinement upon a subsequent conviction than another person who received an identical sentence but did not suffer preconviction custody" (*Bruner,* at pp. 1183-1184; *Rojas, supra,* 23 Cal.3d at p. 156), *Bruner* explained that this protection for a person " 'merely *charged* with a crime' " does not extend to one " 'already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty.' " (*Bruner,* at p. 1184, quoting *Rojas,* at p. 156.)

In contrast to these cases, Hinsdale was not " 'already incarcerated and serving his sentence for a first offense' " (*Bruner, supra,* 9 Cal.4th at p. 1184) when he committed and was charged with the March 2021 offenses; his sentence in the burglary case had not been executed and he was on probation. He was continued on probation in both cases after the December 3, 2021

22

sentencing hearing at which probation was revoked and reinstated in the burglary case and ordered in the vehicle theft case. When the court on March 24, 2023, ordered him to serve the previously suspended concurrent sentences in the two cases, the presentence confinement from March 23 to December 15, 2021, had not been "previously credited against a sentence for unrelated offenses." (*Joyner, supra,* 48 Cal.3d at p. 487.) As the court explained in *People v. Marquez, supra,* 30 Cal.4th at page 23, "[t]he requirement of 'strict causation,' on which this court relied in *Bruner, supra,* 9 Cal.4th 1178, and *Joyner*, *supra*, 48 Cal.3d 487, is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant."

As we have said, "when concurrent sentences are imposed at the same time for unrelated crimes, the defendant is entitled to presentence custody credits on each sentence, provided he is not also in postsentence custody for another crime." (*Kunath*, *supra,* 203 Cal.App.4th at p. 908; *Bruner, supra,* 9 Cal.4th at p. 1192, fn. 9.) *Kunath* explained that while the statutory purpose of "equaliz[ing] the total time in custody between those who suffered presentence custody on unproven charges and those who did not" was not served where "a defendant in postsentence custody is charged with another crime," where "the defendant's custody is solely presentence on all charges and he is simultaneously sentenced on all charges to concurrent terms, the policy behind section 2900.5 applies. Presentence custody credits must apply to all charges to equalize the total time in custody between those who obtain presentence release and those who do not." (*Kunath,* at pp. 910-911.)

Recently, *People v. Cofer* (2024) 103 Cal.App.5th 333, 335, petn. for review pending, petn. filed August 5, 2024, S286297 (*Cofer*), held that "when a defendant is sentenced concurrently at a single hearing to resolve multiple

cases that were not previously the subject of a judgment of conviction or probationary disposition, Penal Code section 2900.5 requires the trial court to apply presentence credits for all periods of actual custody toward all of those concurrent sentences." The defendant in that case was charged in five separate cases, all of which were resolved in a single plea agreement, and then sentenced in all the cases at the same hearing to concurrent terms. (*Id.* at p. 336.) The trial court denied the defendant's request for dual presentence credits for time he was technically out of custody in three of the cases (on bail or own recognizance status) while simultaneously in custody on two others. (*Id.* at p. 337.)

Reversing, the *Cofer* court explained, "Where a defendant is convicted and sentenced at the same hearing on multiple open cases, we believe it is fair and reasonable that the defendant receive credit for all days actually spent in presentence custody; those days should not be limited based on purely technical noncustodial status in any particular case." (*Cofer, supra,* 103 Cal.App.5th at p. 341.) *Cofer* concluded that its interpretation of section 2900.5, subdivision (b), "is not foreclosed by *Joyner* or *Bruner* because the strict causation test they describe applies 'where the defendant has already received credit for such custody in another proceeding.' (*Bruner, supra*, 9 Cal.4th at p. 1180.)" (*Cofer,* at p. 341.) *Cofer* observed that its decision served the statutory purpose of "eliminat[ing] unequal treatment between defendants who are versus are not able to post bail": The defendant had been able to post bail in his first case but apparently unable to do so in the subsequent cases, and the decision "ensures equal treatment between defendant and individuals who could afford bail on additional cases." (*Ibid.*)

The present case differs from *Cofer* and *Kunath* in that Hinsdale entered his plea and was granted probation in the burglary case prior to his

commission of and plea to the offenses in the vehicle theft case. Thereafter, however, the two cases were handled simultaneously, with probation granted in both at the same hearing in December 2021 (albeit after being revoked and reinstated in the burglary case) and probation terminated in both cases at the same hearing in March 2023. When the court ordered execution of the previously suspended concurrent sentences on March 24, 2023, Hinsdale had not yet begun to serve a prison sentence in either case against which presentence credits could have been applied. He is not seeking to have "a period of time previously credited against a sentence for unrelated offenses . . . deemed 'attributable to proceedings' resulting in a later-imposed sentence" (*Joyner, supra,* 48 Cal.3d at p. 489), nor to have "duplicative credits" applied against terms "separately imposed in multiple proceedings." (*Bruner, supra,* 9 Cal.4th at pp. 1191-1192.) Indeed, the time Hinsdale spent in treatment programs as a condition of probation in both cases was credited against his sentences in both.

Had Hinsdale been sentenced to consecutive terms in the two cases, he clearly would not have been entitled to credit for the disputed period in both, as section 2900.5, subdivision (b) provides that "[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." The probation report expressly noted this: The credit chart for the burglary case indicates, as to the credits listed for the disputed period, "*If sentenced consecutively*, the defendant is not entitled to these time credits as they are being attributed to [the vehicle theft case]." (Italics added.) But Hinsdale was sentenced to *concurrent* terms at a *single* proceeding in both cases. It is not apparent why credit for the disputed period was not applied to the present case as well as to the vehicle theft case.

25

We thus agree with Hinsdale that he was entitled to presentence credit in the present case for the disputed period. As indicated on the probation report charts, this period began on March 23, 2021, the date Hinsdale was arrested for the offenses in the vehicle theft case. The petitions to revoke probation in the burglary case were filed March 25, 2021, and the record indicates Hinsdale was remanded without bail in the burglary case on that date. This chronology would mean Hinsdale's custody from March 23 to March 25 was attributable solely to the vehicle theft case and became attributable to the burglary case on the latter date, making his actual days of custody attributable to the burglary case 266 rather than the 268 attributable to the vehicle code case.

Our ability to conclusively determine the number of credits Hinsdale is entitled to in the present case is somewhat hampered, however, by the fact that the appellate record does not include documents filed in the vehicle theft case or reporter's transcripts for all hearings. Since the relevant issues were not addressed at the hearing on appellate counsel's request for correction of the credits awarded, we find it most appropriate to remand the matter for confirmation of the precise number of credits to be added in the burglary case.

## II.
### *There Is No Basis for Resentencing As the Burglary Conviction Qualifies As a Violent Felony Under Section 667.5.*

In a supplemental brief, Hinsdale contends his conviction was not for a "violent" felony and, therefore, he is not subject to the 15 percent limitation on credits. He maintains he is currently serving an unauthorized sentence and must be resentenced and immediately released for time served.

The People respond that Hinsdale's challenge to the nature of his conviction is not cognizable for multiple reasons:  It is untimely, as Hinsdale did not timely appeal from the sentencing order imposing but suspending execution of sentence and placing him on probation in accordance with his plea agreement; he did not attempt to obtain a certificate of probable cause as required to challenge the validity of his plea; he waived his right to appeal as part of his plea agreement; and his no contest plea precludes a challenge to the sufficiency of the evidence to support his conviction.

## A. Hinsdale's Claim Is Not Cognizable on This Appeal.

"Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building, is burglary of the first degree."  (§ 460, subd. (a).)  " '[I]nhabited' means currently being used for dwelling purposes, whether occupied or not."  (§ 459.)  "[A]ny burglary of the first degree" is a "serious felony" (§ 1192.7, subdivision (c)(18)); burglary of the first degree is a "violent felony" (§ 667.5, subdivision (c)(21)), when "it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary."  Both serious felonies and violent felonies are strikes under the Three Strikes law (§ 667, subds. (b)–(i).)  The amount of presentence credit a defendant convicted of a violent felony may earn against a period of confinement is limited to 15 percent.  (§ 2933.1, subd. (c).)  This limitation does not apply to serious felony convictions. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336-1337.)

Hinsdale contends that it was not alleged or proven that a person other than an accomplice was present during the burglary (§ 667.5, subd. (c)(21)) and that the trial court made an implied finding that the structure was unoccupied at the time of the offense.  These claims that he was not properly convicted of burglary within the meaning of section 667.5, subdivision (c)(21),

27

constitute an attack on the validity of his plea. Such a challenge could have been raised by appeal from the December 18, 2020 order granting probation, but only within 60 days of that order (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094; Cal. Rules of Court, rule 8.308, subd. (a))[16] and only upon obtaining from the trial court a certificate of probable cause. (*Mendez,* at p. 1095; § 1237.5.) Hinsdale did neither. "A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.' (6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, § 3220, p. 3979.)" (*Mendez,* at p. 1094.)

Hinsdale argues his claims are cognizable because he is serving an unauthorized sentence, which may be corrected "whenever it comes to the court's attention." (*People v. Codinha* (2023) 92 Cal.App.5th 976, 985.) As earlier indicated, Hinsdale argues that without proof that the first degree burglary he was convicted of was a violent felony, his conduct credits should not have been limited to 15 percent. Errors in calculation of presentence credits result in an unauthorized sentence. (*People v. Guillen* (1994) 25 Cal.App.4th 756, 764.)

Hinsdale's claim appears to be an attempt to avoid the consequence of his failure to earlier challenge his conviction of a violent felony. As he recognizes, "an unauthorized sentence or one in excess of jurisdiction is a sentence that 'could not lawfully be imposed under any circumstance in the particular case.' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1130 (*G.C.*), quoting *People v. Scott* (1994) 9 Cal.4th 331, 354.) The calculation of Hinsdale's credits as subject to the 15 percent limitation applicable to violent felony convictions would be erroneous only if Hinsdale was not in fact convicted of a

---

[16] Further references to rules will be to the California Rules of Court.

violent felony; if the conviction of first degree burglary with a person present is valid, the limitation of presentence credits to 15 percent is also valid. Hinsdale's reliance on the unauthorized sentence doctrine thus depends on a successful challenge to his plea—as to which he failed to timely and properly pursue appellate review.

" ' "The unauthorized sentence doctrine is designed to provide relief from forfeiture for 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings.' . . . 'By permitting a defendant to challenge an unauthorized sentence on appeal even in the absence of an objection below, the unauthorized sentence rule constitutes a narrow exception to the *forfeiture doctrine* (*In re Sheena K.* (2007) 40 Cal.4th 875, 886-887), " 'not to the *jurisdictional* requirement of a timely notice of appeal' " or other means of properly challenging the judgment of conviction. (*G.C., supra*, 8 Cal.5th at p. 1129.) In order to invoke the unauthorized sentence rule in the first instance, our Supreme Court has held the reviewing court "must have jurisdiction over the judgment." (*G.C.*, at p. 1130.)' ([*People v.*] *Moore* [(2021) 68 Cal.App.5th 856,] 865; accord, *People v. King* (2022) 77 Cal.App.5th 629, 637 (*King*).) The unauthorized sentence doctrine does not itself create jurisdiction for an appellate court to rule on the legality of a sentence. (*King*, at pp. 636-637; see *Moore, supra*, at p. 866.)" (*People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1118; *People v. Boyd* (2024) 103 Cal.App.5th 56, 66, petn. for review pending, petn. for review filed July 30, 2024, S286107.)

We conclude Hinsdale claim is not cognizable.

**B. Hinsdale's Sentence Is Not Unauthorized.**

To the extent Hinsdale's claim can be characterized as challenging an unauthorized sentence, it is unavailing because the record makes clear that

Hinsdale's burglary conviction is a violent felony under section 667.5, subdivision (c)(21).

Hinsdale maintains that no special allegation under section 667.5, subdivision (c)(1), was alleged or proven. Count One of the amended complaint charged "first degree burglary, person present" and alleged that Hinsdale and Nicole Le Callahan "enter[ed] an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by John Doe, with the intent to commit larceny and any felony. It was specifically alleged that the charged offense "is a violent felony within the meaning of Penal Code [section] 667.5[, subdivision](c) in that another person, other than an accomplice, was present in the residence during the commission of the above offense." These allegations refute Hinsdale's assertion that there was no allegation the charged burglary came within section 667.5.

Hinsdale argues that although he signed the plea form that specifically stated the first degree burglary was a violent felony pursuant to section 667.5, subdivision (c), "before this penal provision can apply, it must be both 'charged and proved' that 'another person, other than an accomplice, was present in the residence during the commission of the burglary' " and that the colloquy with the judge at the plea hearing reflected an "opposite implied finding directly contradicting the 'person present' allegation."

Hinsdale's contention that there was no proof anyone was in the building during the burglary ignores his plea to the offense with which he was charged. The plea agreement form stated, in a handwritten provision highlighted with asterisks, "this is a violent felony per [Penal Code section] 667.5[, subdivision] (c)." At the hearing on November 18, 2020, Hinsdale affirmed that he had reviewed the form with his attorney, understood the rights he was giving up, understood the consequences of his

30

plea and did not have any questions. The court asked how he pleaded to "Count One, first degree burglary" and Hinsdale responded "[n]o contest."

A plea of guilty or no contest admits every element of the crime charged. (*People v. Thomas* (1986) 41 Cal.3d 837, 844, fn. 6; *People v. Jones* (1959) 52 Cal.2d 636, 651; *People v. Wilson* (2013) 219 Cal.App.4th 500, 511 [no contest].) "A guilty plea ' "concedes . . . the prosecution possesses legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt. Accordingly, a plea of guilty waives any right to raise questions regarding the evidence . . . ." ' [Citations.] The implied admission of the guilty plea obviates 'the need for the People to come forward with any evidence.' [Citations.]" (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458, petn. for review pending, petn. for review filed August 1, 2024, S285924.)

Hinsdale's assertion that the trial court made an implied finding that no person was present at the time of the burglary is based on references by the court, at the sentencing hearing, to the dorm being "unoccupied." Taken in context, our understanding of the court's comments is not the same as Hinsdale's.

At the hearing on December 18, 2020, the prosecutor asked the court to impose a suspended prison sentence. Defense counsel sought probation without imposition of sentence but urged that if a suspended sentence was to be imposed, it should be the low term, as "this isn't the traditional residential burglary with a person present." The court commented that "this was unusual circumstances, and that this was an unoccupied dorm," and that Hinsdale "did know what was going on, that the dorms were unoccupied, and vulnerable." In imposing a suspended execution sentence, the court chose the low term "because of the mitigation of the circumstances different than other

31

residential burglaries, in that the dorms were not occupied, as school was not in session."

But the court also noted, "Confidential victim was vulnerable, that the defendant was going to the dorm and stealing items." This language appears to track that of the probation report, which listed among factors affecting probation that the "confidential victim was vulnerable as he was unaware the defendant was breaking into the dorms and stealing items" (rule 4.414(a)(3)) and, as an aggravating factor, that the "victim was vulnerable as he was in his dorm room and unaware the defendant was breaking into the dorm building and other door [*sic*] rooms and stealing various items." (Rule 4.421(a)(3).) The "confidential victim," the report explains, was a student who was living in the dorm at the time of the burglary even though the majority of the students had been out of the building since March and were not expected back until September. The court noted that it had read and considered the report and "thoughtfully considered probation's recommendation."

Contrary to Hinsdale's view that the court's references to "unoccupied" dorms constitute implied findings that no person was present at the time of the burglary, we understand the court to have been commenting on the fact that Hinsdale chose to burglarize the dorm at a time when it was generally unoccupied because school was not in session. A finding that no person was present during the burglary would be directly inconsistent with the court's express reference to the vulnerability of the confidential victim as a factor at sentencing.[17]

---

[17] Although not mentioned by the court, the probation report's summary of the offense, which indicated it was derived from the sheriff

Hinsdale was charged with first degree burglary with a person present and entered his plea of no contest knowing this was a violent offense under section 667.5, subdivision (c)(21). Accordingly, he was entitled to no more than 15 percent credit against his sentence (§ 2933.1). Imposition of this limitation therefore did not result in an unauthorized sentence.

## DISPOSITION

The June 1, 2023 order dropping the request for correction of presentence credits from calendar, is reversed. The matter is remanded to the trial court with directions to confirm the precise number of credits Hinsdale is entitled to for the period of custody between his March 23, 2021 arrest and his release to Delancey Street on December 15, 2021, consistent with the views expressed in this opinion. The abstract of judgment shall be modified to add these credits and a copy of the amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

---

department's report, also reflects that the person who reported the burglary was in the building when the offense was committed. Granados told the police he lived in an apartment within the building and showed them the location where he "had exited his apartment" and seen the suspects attempting to load a mattress into their vehicle, which was parked directly behind a dorm room with a large broken window. For Granados to have seen the suspects with property taken from the dorm as he was leaving his apartment, he would have had to be *in* his apartment while the burglary was in progress.

_____

STEWART, P. J.


We concur.


_____

MILLER, J.


_____

DESAUTELS, J.


*People v. Hinsdale* (A168957)